## GILES *v.* HARRIS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA.

No. 493.   Submitted February, 24, 1903.—Decided April 27, 1903.

A Circuit Court of the United States in Alabama has not jurisdiction of
an action in equity brought by a colored man, resident in Alabama, on
behalf of himself and other negroes to compel the board of registrars to
enroll their names upon the voting lists of the county in which they re-
side under a constitution alleged to be contrary to the Constitution of
the United States.

THE case is stated in the opinion of the court.

*Mr. Wilford H. Smith* for appellant.

As the facts alleged in the bill of complaint have been ad-
mitted by the demurrer, the only question presented for the
court's consideration is, does the bill contain sufficient allega-
tions of matters of fact to raise a Federal question, and, if so,
whether the trial court under the law had the power and au-
thority to grant the relief prayed for.   The suffrage provisions
of the constitution of Alabama are not only unconstitutional and
void, but a more high-handed and flagrant case of the nullifica-
tion of the Fourteenth and Fifteenth Amendments to the Con-
stitution of the United States and repudiation of their solemn
guarantees to the negroes of America can never be presented
to the courts of the country.

If the suffrage provisions of the constitution of Alabama
bore equally upon the whites and blacks alike, no matter what
the standard of property or education required might be, no
cause of complaint would be urged here against them ; but
they sought to restrict the suffrage of the blacks without de-
priving a single white man of his right to vote.

While the Fourteenth and Fifteenth Amendments do not
confer the right of suffrage upon the negro, they contain a
solemn guarantee of this nation that no State shall give any

preference in this particular to the white citizens over the blacks, or deny the negroes the right to vote, or hinder them in the exercise of the same, because of their race and color and previous condition of servitude, and it is clearly within the equity jurisdiction of the courts of the United States to enforce this solemn guarantee.

I. Sec. 1979, Rev. Stat., brought forward from the act of April 20, 1871, provides "that every person who under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or the immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress," and manifestly confers jurisdiction upon courts of equity to grant relief against the threatened deprivation of rights guaranteed under the Fourteenth and Fifteenth Amendments. Sec. 629, Rev. Stat. cl. 16. *Holt v. Indiana Manufacturing Co.*, 176 U. S. 68.

II. This is not a suit brought to enforce a political right, but a civil right guaranteed by the Constitution of the United States. Nor is it sought in this action to control the exercise of any political functions of the State of Alabama, since no State has the right, nor have its officers the right, to deprive any person of the equal protection of the law, or of his right to vote, on account of his race and color or previous condition of servitude. *United States v. Reese*, 92 U. S. 214; *Mills v. Green*, 69 Fed. Rep. 852; *United States v. Cruikshank*, 92 U. S. 542.

III. The courts of law are without power to give that efficacious and specific redress in the matter of the enforcement and protection of the rights guaranteed under the Fifteenth Amendment, because it would be absurd to argue that any money damage, however large, could in the least degree compensate a negro in Alabama for the deprivation of his right to vote on account of his race and color. A court of equity, exercising its remedial principles of specific redress, with its ability to look through forms at the substance and its power to detect and

expose fraud and conspiracy and cunning and chicanery, can alone grant that relief without which there would be no relief in a case like this. Equity alone has the power to anticipate and prevent a threatened injury where the damage would be insufficient or the wrong irreparable. *Ex parte Lennon,* 166 U. S. 548 ; *Vicksburg Water Works Co.* v. *Vicksburg,* 185 U. S. 65.

IV. The Circuit Courts of the United States, sitting in equity, have jurisdiction to enforce and protect the civil rights of a citizen guaranteed by the Fourteenth and Fifteenth Amendments, and this court is not confined to the decision of the question of jurisdiction alone, but should also decide the further question of whether or not the suffrage provisions of the constitution of Alabama are in contravention of the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

The act of March 3, 1891, section 5, while it gives the Circuit Court the right to certify the jurisdiction alone to the Supreme Court, does not give the Circuit Court the right by such certification to cut the Supreme Court off from considering other questions which could properly come up on appeal from the Circuit Court. *McLish* v. *Roff,* 141 U. S. 661 ; *Horner* v. *United States,* 143 U. S. 578 ; *Holder* v. *Aultman, Miller & Co.,* 169 U. S. 81 ; *Scott* v. *Donald,* 165 U. S. 58 ; *Penn. Mut. Life Ins. Co.* v. *Austin,* 168 U. S. 685 ; *Whitten* v. *Tomlinson,* 160 U. S. 231.

V. Conceding that this court is confined to the question of jurisdiction alone, and is without the power, on this appeal, of considering any other questions involved in the record, it is wholly impossible for the court to separate the question of jurisdiction in this case from the question of whether or not the suffrage provisions of the constitution of Alabama are in contravention of the Fourteenth and Fifteenth Amendments to the Constitution of the United States. Indeed, the two questions are one and inseparable.

VI. Sec. 180 of art. 8 of the constitution of Alabama, known and administered as the temporary plan, contravenes the Fourteenth and Fifteenth Amendments to the Constitution of the United States, in its purpose, in its language and meaning, and

in the way and manner in which it has been carried out and administered by the authorities in the State of Alabama.

The speeches in the convention cited in the record show that the purpose the convention had in view in framing the provisions on suffrage and elections was to invent a scheme by which to disfranchise the negroes without disfranchising a single white man in Alabama.

Subdivisions 1 and 2 of section 180, fixing qualifications upon persons who served in the war of 1812, and in the war with Mexico and with the Indians, and in the land or naval forces of the Confederate States, and their descendants, discriminate against the negroes of Alabama, for the reason that it was impossible, owing to their previous condition of servitude, for them to attain to such qualifications.

Subdivision 3 is too general, and really describes no qualifications, but simply invests the registrars with unlimited and arbitrary power.

If our contention is wrong as to the language and meaning of these subdivisions, still we insist that the administration of said section by all the boards of registrars in the State of Alabama, as shown in the bill and admitted by the demurrer, makes this section unconstitutional and void, because the registrars refused to register qualified negroes for no other reason than their race and color, and required the negroes to produce the testimony of white men as to their qualifications and character, and refused to accept the testimony of colored men, while all white men were registered upon their application without further proof of qualifications than the oath of the applicant. *Ah Kow* v. *Neunan,* 5 Sawyer, 560; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Davies* v. *McKeeby,* 5 Nevada, 369.

VII. Section 181 of the constitution of Alabama, known as the permanent plan, contravenes the Fourteenth and Fifteenth Amendments to the Constitution of the United States, in its purpose and object and in its language and meaning, and therefore should be declared null and void and should not be allowed to be enforced.

But, conceding that the foregoing argument is untenable as to the section, it is clearly made unconstitutional and void in

the manner of the administration of the temporary plan by the registrars in allowing all white men in the State of Alabama to qualify under the temporary plan, and at the same time refusing to allow nearly all negroes to qualify under the same for no other reason than their race and color, and telling them to come back after the 1st of January, 1903, which is admitted by the demurrer. The State of Alabama, through the registrars, has thus compelled the negroes to look to the permanent plan alone for their qualifications to become electors, which makes the law special class legislation from its inception intended to · operate against the negroes of Alabama alone. *Jew Ho* v. *Williamson,* 103 Fed. Rep. 10; *Yick Wo* v. *Hopkins,* 118 U. S. 356.

VIII. Section 186 of the suffrage article of the new constitution of Alabama is obnoxious and repugnant to the Fourteenth and Fifteenth Amendments in that the boards of registrars are given absolute and unlimited power and are clothed with the discretion of judicial officers solely for the purpose of placing the said boards beyond the process of the courts, and of more effectually denying, abridging, and hindering the orator in his right to qualify as an elector, and to vote in the State of Alabama, on the ground of his race and color and previous condition of servitude, and said section is also a part of the scheme to deny and abridge his right to vote in the State of Alabama and the right of his race to vote on account of their race and color and previous condition of servitude. *Carter* v. *Texas,* 177 U. S. 442; *Ah Kow* v. *Neunan,* 5 Sawyer, 560; *Yick Wo* v. *Hopkins,* 118 U. S. 356.

*Mr. William A. Gunter* for appellees.

Besides the motion to dismiss, argued below, two questions arise in this appeal, both involving the jurisdiction of the court: (1) Whether the constitution of the court admits of the cognizance of cases of this class, involving "the assertion and protection of political rights;" (2) whether, conceding the first question, such a case is made out as authorizes the exercise of equitable jurisdiction. It is important, for obvious reasons,

that the latter question, if possible, be authoritatively settled, and therefore, we discuss it in the first instance.

I. The duty and responsibility of prescribing the qualification of state electors, who must select the incumbents of political offices, rests entirely with the state government, with the exception of the restraints imposed by the Fifteenth Amendment of the Constitution of the United States. That provision does not pretend to extend any right, or give any privilege, but by negation provides that the right to vote "shall not be denied or abridged by the United States or by any State on account of race, color or previous condition of servitude." *United States v. Reese*, 92 U. S. 214. It is thus plain that the State is at perfect liberty to deny or abridge the right to vote *ad libitum*, provided it touches no question of race, color or previous condition of servitude. Looking at the provisions of the constitution of Alabama brought into question on this appeal, they can and do challenge the closest scrutiny.

It is thus seen that the State gave the right to register as an elector prior to January, 1903, to three classes of male citizens of the State and United States having a certain age and qualification as to residence, viz. : First, soldiers and sailors; second, their descendants; third, all citizens of good character understanding the duties and obligations of citizenship. It cannot be said, that giving the privilege to soldiers and sailors and their descendants was a *denial* or *abridgment* of the right to vote on account of color, race or previous condition of servitude.

These provisions might, and did, in fact, include many citizens of dark color, many of the negro race, and many who had been slaves. The objection, then, if any can be made, must rest on the third provision extending the privilege to all persons of good character understanding the duties and obligations of citizenship. It is evident that there can be no valid objection to the terms of this clause. It is clear that persons of the negro race may have in the highest degree good characters, and understand the duties and obligations of citizenship under a republican government, and thus that they are not excluded. On the other hand, it is equally obvious that white persons are liable to be excluded as not possessing these qualifications.

Therefore, the clause is unobjectionable in its terms.  *Williams* v. *Mississippi*, 170 U. S. 213 ; *Ratcliffe* v. *Beal*, 20 So. Rep. 865.

The constitution of Alabama applies, it is admitted, a test which will exclude with many whites, the mass of the negro population from the privilege of voting.  Certainly the Constitution of the United States cannot be construed into denying the right of a State to prohibit criminals and ignorant persons of bad character from electing its officers and legislators.

It is insisted, however, that this law was passed with the intent to exclude the negro only, and the speeches of members of the Convention are referred to, to give color to the act.

The intent of a legislative act can only be gathered from its language.  The Convention is responsible only for its collective acts embodied in laws, and not at all for the views of individual members.  *Fletcher* v. *Peck*, 6 Cranch, 87 ; *Dodge* v. *Woolsey*, 18 How. 371 ; *United States* v. *Des Moines*, 142 U. S. 545 ; 1 Notes to U. S. Rep. 305.

II. A court of equity has no jurisdiction of the subject matter involved in this case.  The object of this suit is to restrain the operations of the state government for the assertion and vindication of a political right to be an elector..  This is not within the province of equity jurisprudence.  *Green* v. *Mills*, 69 Fed. Rep. 852 ; *Mississippi* v. *Johnson*, 4 Wall. 475 ; *In re Sawyer*, 124 U. S. 200 ; *Fletcher* v. *Tuttle*, 151 Illinois, 41.

It is plain that the right to be admitted to registration as an elector, which is sought to be enforced in this case, is purely political and therefore beyond the jurisdiction of a court of equity.

If there is such a right in any particular case which is denied, it is supposed that the remedies at law are ample for redress, and, certainly, it is wholly beyond the province of a court of equity by its decrees to interfere with the ordinary operations of government as is here proposed.

III. The appeal should be dismissed because it is impossible for the appellate court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief.  *Mills* v. *Green*, 159 U. S. 651.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by a colored man, on behalf of himself " and on behalf of more than five thousand negroes, citizens of the county of Montgomery, Alabama, similarly situated and circumstanced as himself," against the board of registrars of that county. The prayer of the bill is in substance that the defendants may be required to enroll upon the voting lists the name of the plaintiff and of all other qualified members of his race who applied for registration before August 1, 1902, and were refused, and that certain sections of the constitution of Alabama, viz., sections 180, 181, 183, 184, 185, 186, 187 and 188 of article 8, may be declared contrary to the Fourteenth and Fifteenth Amendments of the Constitution of the United States, and void.

The allegations of the bill may be summed up as follows. The plaintiff is subject to none of the disqualifications set forth in the constitution of Alabama and is entitled to vote—entitled, as the bill plainly means, under the constitution as it is. He applied in March, 1902, for registration as a voter, and was refused arbitrarily on the ground of his color, together with large numbers of other duly qualified negroes, while all white men were registered. The same thing was done all over the State. Under section 187 of article 8 of the Alabama constitution persons registered before January 1, 1903, remain electors for life unless they become disqualified by certain crimes, etc., while after that date severer tests come into play which would exclude, perhaps, a large part of the black race. Therefore, by the refusal, the plaintiff and the other negroes excluded were deprived not only of their vote at an election which has taken place since the bill was filed, but of the permanent advantage incident to registration before 1903. The white men generally are registered for good under the easy test and the black men are likely to be kept out in the future as in the past. This refusal to register the blacks was part of a general scheme to disfranchise them, to which the defendants and the State itself, according to the bill, were parties. The defendants accepted their office for the purpose of carrying out the scheme. The

part taken by the State, that is, by the white population which framed the constitution, consisted in shaping that instrument so as to give opportunity and effect to the wholesale fraud which has been practised.

The bill sets forth the material sections of the state constitution, the general plan of which, leaving out details, is as follows: By § 178 of article 8, to entitle a person to vote he must have resided in the State at least two years, in the county one year and in the precinct or ward three months, immediately preceding the election, have paid his poll taxes and have been duly registered as an elector. By § 182, idiots, insane persons and those convicted of certain crimes are disqualified. Subject to the foregoing, by § 180, before 1903 the following male citizens of the State, who are citizens of the United States, were entitled to register, viz.: First. All who had served honorably in the enumerated wars of the United States, including those on either side in the " war between the States." Second. All lawful descendants of persons who served honorably in the enumerated wars or in the war of the Revolution. Third. " All persons who are of good character and who understand the duties and obligations of citizenship under a republican form of government." As we have said, according to the allegations of the bill this part of the constitution, as practically administered and as intended to be administered, let in all whites and kept out a large part, if not all, of the blacks, and those who were let in retained their right to vote after 1903, when tests which might be too severe for many of the whites as well as the blacks went into effect. By § 181, after January 1, 1903, only the following persons are entitled to register: First. Those who can read and write any article of the Constitution of the United States in the English language, and who either are physically unable to work or have been regularly engaged in some lawful business for the greater part of the last twelve months, and those who are unable to read and write solely because physically disabled. Second. Owners or husbands of owners of forty acres of land in the State, upon which they reside, and owners or husbands of owners of real or personal estate in the State assessed for taxation at three

hundred dollars or more, if the taxes have been paid unless under contest. By § 183, only persons qualified as electors can take part in any method of party action. By § 184, persons not registered are disqualified from voting. By § 185, an elector whose vote is challenged shall be required to swear that the matter of the challenge is untrue before his vote shall be received. By § 186, the legislature is to provide for registration after January 1, 1903, the qualifications and oath of the registrars are prescribed, the duties of registrars before that date are laid down, and an appeal is given to the county court and Supreme Court if registration is denied. There are further executive details in § 187, together with the above mentioned continuance of the effect of registration before January 1, 1903. By § 188, after the last mentioned date applicants for registration may be examined under oath as to where they have lived for the last five years, the names by which they have been known, and the names of their employers. This, in brief, is the system which the plaintiff asks to have declared void.

Perhaps it should be added to the foregoing statement that the bill was filed in September, 1902, and alleged the plaintiff's desire to vote at an election coming off in November. This election has gone by, so that it is impossible to give specific relief with regard to that. But we are not prepared to dismiss the bill or the appeal on that ground, because to be enabled to cast a vote in that election is not, as in *Mills* v. *Green*, 159 U. S. 651, 657, the whole object of the bill. It is not even the principal object of the relief sought by the plaintiff. The principal object of that is to obtain the permanent advantages of registration as of a date before 1903.

The certificate of the circuit judge raises the single question of the jurisdiction of the court. The plaintiff contends that this jurisdiction is given expressly by Rev. Stat. § 629, cl. 16, coupled with Rev. Stat. § 1979, which provides that every person who, under color of a state " statute, ordinance, regulation, custom, or usage," " subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

We assume, as was assumed in *Holt* v. *Indiana Manufacturing Co.*, 176 U. S. 68, 72, that § 1979 has not been repealed, and that jurisdiction to enforce its provisions has not been taken away by any later act. But it is suggested that the Circuit Court was right in its ruling that it had no jurisdiction as a court of the United States, because the bill did not aver threatened damage to an amount exceeding two thousand dollars. It is true that by the act of August 13, 1888, c. 866, § 1, 25 Stat. 433, 434, the Circuit Courts are given cognizance of suits of a civil nature, at common law or in equity, arising under the Constitution or laws of the United States, in which the matter in dispute exceeds the sum or value of two thousand dollars. We have recognized, too, that the deprivation of a man's political and social rights properly may be alleged to involve damage to that amount, capable of estimation in money. *Wiley* v. *Sinkler*, 179 U. S. 58; *Swafford* v. *Templeton*, 185 U. S. 487. But, assuming that the allegation should have been made in a case like this, the objection to its omission was not raised in the Circuit Court, and as it could have been remedied by amendment, we think it unavailing. The certificate was made *alio intuitu*. There is no pecuniary limit on appeals to this court under section 5 of the act of 1891, c. 517, 26 Stat. 826, 828, *The Paquete Habana*, 175 U. S. 677, 683, and we do not feel called upon to send the case back to the Circuit Court in order that it might permit the amendment. In *Mills* v. *Green*, 159 U. S. 651; *S. C.*, 69 Fed. Rep. 852, no notice was taken of the absence of an allegation of value in a case like this.

We assume further, for the purposes of decision, that § 1979 extends to a deprivation of rights under color of a state constitution, although it might be argued with some force that the enumeration of " statute, ordinance, regulation, custom, or usage," purposely is confined to inferior sources of law. On these assumptions we are not prepared to say that an action at law could not be maintained on the facts alleged in the bill. Therefore we are not prepared to say that the decree should be affirmed

on the ground that the subject matter is wholly beyond the jurisdiction of the Circuit Court. *Smith* v. *McKay*, 161 U. S. 355, 358, 359.

Although the certificate relates only to the jurisdiction of that court as a court of the United States, yet, as the ground of the bill is that the constitution of Alabama is in contravention of the Constitution of the United States, the appeal opens the whole case under the act of 1891, c. 517, § 5, 26 Stat. 827. The plaintiff had the right to appeal directly to this court. The certificate was unnecessary to found the jurisdiction of this court, and could not narrow it. As the case properly is here we proceed to consider the substance of the complaint.

It seems to us impossible to grant the equitable relief which is asked. It will be observed in the first place that the language of § 1979 does not extend the sphere of equitable jurisdiction in respect of what shall be held an appropriate subject matter for that kind of relief. The words are "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." They allow a suit in equity only when that is the proper proceeding for redress, and they refer to existing standards to determine what is a proper proceeding. The traditional limits of proceedings in equity have not embraced a remedy for political wrongs. *Green* v. *Mills*, 69 Fed. Rep. 852. But we cannot forget that we are dealing with a new and extraordinary situation, and we are unwilling to stop short of the final considerations which seems to us to dispose of the case.

The difficulties which we cannot overcome are two, and the first is this : The plaintiff alleges that the whole registration scheme of the Alabama constitution is a fraud upon the Constitution of the United States, and asks us to declare it void. But of course he could not maintain a bill for a mere declaration in the air. He does not try to do so, but asks to be registered as a party qualified under the void instrument. If then we accept the conclusion which it is the chief purpose of the bill to maintain, how can we make the court a party to the unlawful scheme by accepting it and adding another voter to its fraudulent lists ? If a white man came here on the same gen-

eral allegations, admitting his sympathy with the plan, but alleging some special prejudice that had kept him off the list, we hardly should think it necessary to meet him with a reasoned answer. But the relief cannot be varied because we think that in the future the particular plaintiff is likely to try to overthrow the scheme. If we accept the plaintiff's allegations for the purposes of his case, he cannot complain. We must accept or reject them. It is impossible simply to shut our eyes, put the plaintiff on the lists, be they honest or fraudulent, and leave the determination of the fundamental question for the future. If we have an opinion that the bill is right on its face, or if we are undecided, we are not at liberty to assume it to be wrong for the purposes of decision. It seems to us that unless we are prepared to say that it is wrong, that all its principal allegations are immaterial and that the registration plan of the Alabama constitution is valid, we cannot order the plaintiff's name to be registered. It is not an answer to say that if all the blacks who are qualified according to the letter of the instrument were registered, the fraud would be cured. In the first place, there is no probability that any way now is open by which more than a few could be registered, but if all could be the difficulty would not be overcome. If the sections of the constitution concerning registration were illegal in their inception, it would be a new doctrine in constitutional law that the original invalidity could be cured by an administration which defeated their intent. We express no opinion as to the alleged fact of their unconstitutionality beyond saying that we are not willing to assume that they are valid, in the face of the allegations and main object of the bill, for the purpose of granting the relief which it was necessary to pray in order that that object should be secured.

The other difficulty is of a different sort, and strikingly reinforces the argument that equity cannot undertake now, any more than it has in the past, to enforce political rights, and also the suggestion that state constitutions were not left unmentioned in § 1979 by accident. In determining whether a court of equity can take jurisdiction, one of the first questions is what it can do to enforce any order that it may make. This is al-

leged to be the conspiracy of a State, although the State is not and could not be made a party to the bill. *Hans* v. *Louisiana*, 134 U. S. 1. The Circuit Court has no constitutional power to control its action by any direct means. And if we leave the State out of consideration, the court has as little practical power to deal with the people of the State in a body. The bill imports that the great mass of the white population intends to keep the blacks from voting. To meet such an intent something more than ordering the plaintiff's name to be inscribed upon the lists of 1902 will be needed. If the conspiracy and the intent exist, a name on a piece of paper will not defeat them. Unless we are prepared to supervise the voting in that State by officers of the court, it seems to us that all that the plaintiff could get from equity would be an empty form. Apart from damages to the individual, relief from a great political wrong, if done, as alleged, by the people of a State and the State itself, must be given by them or by the legislative and political department of the government of the United States.

*Decree affirmed.*

Mr. JUSTICE BREWER dissenting.

I am unable to concur in either the opinion or judgment in this case. The single question is whether the Circuit Court of the United States had jurisdiction. Accepting the statement of facts in the opinion of the majority as sufficiently full, it appears that the plaintiff was entitled to a place on the permanent registry and was denied it by the defendants, the board of registrars in the county in which he lived. No one was allowed to vote who was not registered. He desired to vote at the coming election for representative in Congress. He was deprived of that right by the action of the defendants. Has the Circuit Court jurisdiction to redress such wrong? It is conceded that because of the permanence of the registry the appeal cannot be dismissed under *Mills* v. *Green*, 159 U. S. 651, for if registered on the permanent registry the plaintiff can vote at all future elections.

Whether the plaintiff's remedy was at law or in equity, can-

not be considered on this appeal. It was so decided in *Smith* v. *McKay*, 161 U. S. 355, the authority of which is not in terms denied in the opinion of the majority, although by the decision it is practically disregarded. The certificate of the trial judge stated that "the only question considered and decided by the court in dismissing the bill of complaint was, whether upon the bill and demurrer thereto a case is presented, of which this court has jurisdiction under the Constitution or laws of the United States."

The act of Congress authorizing appeals directly from the Circuit Courts to this court, 26 Stat. 827, provides that :

" In any case in which the jurisdiction of the court is in issue; in such cases the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision."

In *Smith* v. *McKay*, we said (p. 358) :

" When the requisite citizenship of the parties appears, and the subject matter is such that the Circuit Court is competent to deal with it, the jurisdiction of that court attaches, and whether the court should sustain the complainant's prayer for equitable relief, or should dismiss the bill with leave to bring an action at law, either would be a valid exercise of jurisdiction. If any error were committed in the exercise of such jurisdiction, it could only be remedied by an appeal to the Circuit Court of Appeals."

See also *Tucker* v. *McKay*, 164 U. S. 701; *Murphy* v. *Colorado Paving Company*, 166 U. S. 719 ; *Shepard* v. *Adams*, 168 U. S. 618, 622 ; *Building & Loan Association* v. *Price*, 169 U. S. 45, in which we said :

" The complainant appealed to this court, which appeal was allowed and granted solely upon the question of the jurisdiction of the Circuit Court, and that question alone has been certified. Whether the bill shows facts sufficient to invoke the consideration of a court of equity is not such a question of jurisdiction as is referred to in the Judiciary Act of March 3, 1891, c. 517, and we have therefore no concern with that question." *Blythe Company* v. *Blythe*, 172 U. S. 644; *Blythe* v. *Hinckley*, 173 U. S. 501, 506, from which I quote : " Appeals or writs of error may be taken directly from the Circuit Courts to this court in

cases in which the jurisdiction of those courts is in issue, that is, their jurisdiction as Federal courts, the question alone of jurisdiction being certified to this court. The Circuit Court held that the remedy was at law and not in equity. That conclusion was not a decision that the Circuit Court had no jurisdiction as a court of the United States. "

A still more significant case is *Huntington* v. *Laidley*, 176 U. S. 668. In that case proceedings had been had in the courts of the State resulting in a final determination of the controversy. Subsequently this action was commenced in the Federal court, and the final decision of the state courts was pleaded as *res judicata*. The Circuit Court dismissed the suit for want of jurisdiction, and certified the question to this court. I thought it was sacrificing substance to form to reverse the judgment of dismissal when it was apparent that the controversy had been settled by the decisions in the state court, and, therefore, could not rightfully be relitigated in the Federal court. But this court held that the only question to be considered was that of jurisdiction, saying (p. 679):

" Under the circumstances of this case, the question whether the proceedings in any or all of the suits, at law or in equity, in the state court, afforded a defence—either by way of *res adjudicata*, or because of any control acquired by the state court over the subject matter—to this bill in the Circuit Court of the United States, was not a question affecting the jurisdiction of that court, but was a question affecting the merits of the cause, and as such to be tried and determined by that court in the exercise of its jurisdiction. The Circuit Court of the United States cannot, by treating a question of merits as a question of jurisdiction, enable this court, upon a direct appeal on the question of jurisdiction only, to decide the question of merits, except in so far as it bears upon the question whether the court below had or had not jurisdiction of the case. In any aspect of the case, the decree of the Circuit Court of the United States, dismissing the suit for want of jurisdiction, must be reversed, and the cause remanded to that court for further proceedings therein."

Although the statute and these decisions thus expressly limit the range of inquiry on a certificate of jurisdiction to the ques-

tion of jurisdiction, is is held that because there is a constitutional question shown in the pleadings, the certificate may be ignored and the entire case presented to this court for consideration. In other words, although the plaintiff, by his method of appeal, following the provisions of the statute, limited the inquiry to the matter of jurisdiction, this court will ignore such limit and treat the case as coming here on a general appeal, which he did not take. This conclusion seems to me to practically destroy the statute and overrule the prior decisions, for the jurisdiction of Federal courts primarily rests on the Constitution of the United States and the extent of their jurisdiction is determined by its provisions. Hence every case coming up on a certificate of jurisdiction may be held to present a constitutional question and be open for full inquiry in respect to all matters involved.

Neither can I assent to the proposition that the case presented by the plaintiff's bill is not strictly a legal one and entitling a party to a judicial hearing and decision. He alleges that he is a citizen of Alabama, entitled to vote ; that he desired to vote at an election for representative in Congress ; that without registration he could not vote, and that registration was wrongfully denied him by the defendants. That many others were similarly treated does not destroy his rights or deprive him of relief in the courts. That such relief will be given has been again and again affirmed in both National and state courts.

That the United States Circuit Court has jurisdiction of an action like this seems to me to result inevitably from prior decisions of this court. Without stopping to notice in detail the cases of *Ex parte Siebold,* 100 U. S. 371 ; *Ex parte Yarbrough,* 110 U. S. 651, and *In re Coy,* 127 U. S. 731, in which the general jurisdiction of Federal courts over matters involved in the election of national officers is affirmed, I refer to two recent cases which bear directly upon the present question. *Wiley* v. *Sinkler,* 179 U. S. 58, was an action brought in the Circuit Court of the United States by the plaintiff to recover damages of an election board for wilfully rejecting his vote for a member of the House of Representatives. We held that the court had jurisdiction, and said (p. 64):

"This action is brought against election officers to recover damages for their rejection of the plaintiff's vote for a member of the House of Representatives of the United States. The complaint, by alleging that the plaintiff was at the time, under the constitution and laws of the State of South Carolina and the Constitution and laws of the United States, a duly qualified elector of the State, shows that the action is brought under the Constitution and laws of the United States. The damages are laid at the sum of $2500. What amount of damages the plaintiff shall recover in such an action is peculiarly appropriate for the determination of a jury, and no opinion of the court upon that subject can justify it in holding that the amount in controversy was insufficient to support the jurisdiction of the Circuit Court. *Barry* v. *Edmunds*, 116 U. S. 550 ; *Scott* v. *Donald*, 165 U. S. 58, 89; *Vance* v. *W. A. Vandercook Co.*, 170 U. 468, 472 ; *North American Co.* v. *Morrison*, 178 U. S. 262, 267. The Circuit Court therefore clearly had jurisdiction of this action, and we are brought to the consideration of the other objections presented by the demurrer to the complaint."

Again, in *Swafford* v. *Templeton*, 185 U. S. 487, which, like the former case, was one brought in the Circuit Court of the United States to recover damages for the alleged wrongful refusal by the defendants as election officers to permit the plaintiff to vote at a national election for a member of the House of Representatives, it was held that the court had jurisdiction. Here, too, we said, after referring to *Wiley* v. *Sinkler* (p. 492):

"It is manifest from the context of the opinion in the case just referred to that the conclusion that the cause was one arising under the Constitution of the United States was predicated on the conception that the action sought the vindication or protection of the right to vote for a member of Congress, a right, as declared in *Ex parte Yarbrough*, 110 U. S. 655, 664, ' fundamentally based upon the Constitution of the United States, which created the office of member of Congress, and declared that it should be elective, and pointed out the means of ascertaining who should be electors.' That is to say, the ruling was that the case was equally one arising under the Constitution or laws of the United States, whether the illegal act complained

of arose from a charged violation of some specific provision of the Constitution or laws of the United States, or from the violation of a state law which affected the exercise of the right to vote for a member of Congress, since the Constitution of the United States had adopted, as the qualifications of electors for members of Congress, those prescribed by the State for electors of the most numerous branch of the legislature of the State. It results from what has just been said that the court erred in dismissing the action for want of jurisdiction, since the right which it was claimed had been unlawfully invaded was one in the very nature of things arising under the Constitution and laws of the United States, and that this inhered in the very substance of the claim. It is obvious from an inspection of the certificate that the court, in dismissing for want of jurisdiction, was controlled by what it deemed to be the want of merit in the averments which were made in the complaint as to the violation of the Federal right. But as the very nature of the controversy was Federal, and, therefore, jurisdiction existed, whilst the opinion of the court as to the want of merit in the cause of action might have furnished ground for dismissing for that reason, it afforded no sufficient ground for deciding that the action was not one arising under the Constitution and laws of the United States."

It seems to me nothing need be added to these decisions, and unless they are to be considered as overruled they are decisive of this case.

MR. JUSTICE BROWN also dissents.

MR. JUSTICE HARLAN dissenting.

By the final judgment in the Circuit Court the bill in this case was dismissed for want of jurisdiction to entertain it and for want of equity; and from that judgment the plaintiffs prayed and were allowed an appeal.

Subsequently an order was made by the Circuit Court certifying that the only question considered and decided was whether upon the bill and demurrer a case was presented of

which it had jurisdiction under the Constitution and laws of the United States.

Although the case involves questions of considerable importance, it was submitted here without oral argument.

Could the Circuit Court take cognizance of this cause consistently with the act of Congress regulating its jurisdiction? This is naturally the fundamental, if not the only, question in the case. An answer to the question requires a reference to several acts of Congress, including the Judiciary Act of August 13, 1888, correcting that of March 3, 1887. 25 Stat. 433.

Section 629 of the Revised Statutes enumerates in subdivisions the cases of which the Circuit Courts of the United States may take original cognizance.

In subdivision one of that section the Circuit Courts are given original cognizance " of all suits of a civil nature at common law or in equity, where the matter in dispute, exclusive of costs, exceeds the sum or value of five hundred dollars, and an alien is a party, or the suit is between a citizen of the State where it is brought and a citizen of another State;" and in subdivision two, " of all suits in equity, where the matter, exclusive of costs, exceeds the sum or value of five hundred dollars, and the United States are petitioners." Rev. Stat. § 629, subdiv. 1 and 2.

By the sixteenth subdivision of that section it is declared that the Circuit Courts shall have original cognizance " of all suits authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States." The matter in dispute in such suits was not expressly required by the Revised Statutes to have any money value.

By section 1979 of the Revised Statutes, Title 24, " Civil Rights," it is provided that " every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citi-

zen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." It has been said that this section as well as subdivision 16 of section 629 were based upon the first section of the act of April 20, 1871, 17 Stat. 13, c. 22, entitled " An act to enforce the provisions of the Fourteenth Amendment to the Constitution of the United States, and for other purposes." *Holt* v. *Indiana Manuf. Co.*, 176 U. S. 68, 70.

Next came the act of March 3, 1875, which provided that " The Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, *and* arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or in which the United States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of different States or a controversy between citizens of the same State claiming lands under grants of different States, or a controversy between citizens of a State and foreign States, citizens, or subjects; and shall have exclusive cognizance of all crimes and offences cognizable under the authority of the United States, except as otherwise provided by law, and concurrent jurisdiction with the District Courts of the crimes and offences cognizable therein." 18 Stat. 470, c. 137. That act expressly repealed previous statutes in conflict with its provisions.

Then came the act of 1888, correcting that of 1887, and which provides " That the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, *and* arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their author-

ity, or in which controversy the United States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of different States, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid, or a controversy between citizens of the same State claiming lands under grants of different States, or a controversy between citizens of a State and foreign States, citizens, or subjects, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid." By that act the conflicting provisions of previous acts were repealed, except in certain particulars, among which were the provisions relating to " any jurisdiction or right mentioned . . . in Title twenty-four of the Revised Statutes," Civil Rights, under which Title § 1979 is found.

It is clear that under the act of 1888 a Circuit Court could not take original cognizance of a suit simply because it was one arising under the Constitution or laws of the United States. The value of the matter in dispute in such a case must exceed $2000, exclusive of interest and costs.

The bill makes no allegation whatever as to the value of the matter in dispute, although this court, speaking by the Chief Justice, in *Holt* v. *Indiana Manufacturing Company*, above cited, after referring to the first section of the Judiciary Act of 1888, said: " This " [the question of the value in dispute in cases arising under the Constitution or laws of the United States] " was carefully considered in *United States* v. *Sayward*, 160 U. S. 493, and it was held that the sum or value named was *jurisdictional*, and that the Circuit Court could not, under the statute, take original cognizance of a case arising under the Constitution or laws of the United States unless the sum or value of the matter in dispute, exclusive of costs and interest, exceeded two thousand dollars. That decision was reaffirmed in *Fishback* v. *Western Union Telegraph Company*, 161 U. S. 96, 99." It was added—contrary to the intimation given in the opinion in the present case—that " the conclusion reached is not affected by the fact that the operation of the act of March 3, 1891, was to do away with any pecuniary limitation on appeals directly from the Circuit Courts to this court. *The Paquete*

*Habana,* 175 U. S. 677." Of course, it was not meant by that language that the jurisdiction of the Circuit Courts, so far as the value of the matter in dispute is concerned, was changed as to the cases embraced by the fifth section of the act of 1891. The act of 1891 left the original jurisdiction of the Circuit Courts as established by the act of 1888.

1. It cannot be disputed that the present suit is one arising under the Constitution and laws of the United States, and it is clear that the value of the matter in dispute is made by the statute an essential element in the jurisdiction of the Circuit Court in such a case. But it has been suggested that this suit is also embraced by subdivision 16 of § 629 and § 1979 of the Revised Statutes—which provisions this court assumed, in *Holt* v. *Manufacturing Co.,* and now assumes, were not repealed by any subsequent statute, and, therefore, that the value of the matter in dispute is of no consequence. But this suggestion overlooks the declaration of the court in that case to the effect that although the above provisions must be assumed to be still (1899) in force, they refer "to civil rights only." 176 U. S. 72. In this view, subdivision 16 of § 629 and § 1979 of the Revised Statutes have no bearing upon the present case, if the rights for the protection of which the present suit was brought are political rights, and not civil rights within the meaning of the statutes relating to "Civil Rights." Consequently the saving clause in the act of 1888 in respect of any jurisdiction or right mentioned in Title 24 of the Revised Statutes, Civil Rights, becomes immaterial in the present case. Whether this be so or not, the court refrains from declaring that the plaintiff could proceed under subdivision 16 of section 629 or section 1979 of the Revised Statutes, without regard to the value of the matter in dispute. If this court thinks that this suit could be maintained under subdivision 16 of § 629 or under § 1979, or under both, without regard to the value of the matter in dispute, I submit that it should have been so adjudged.

2. Referring to the suggestion that the act of 1888 gives the Circuit Court jurisdiction in all suits at law or equity, in which the matter in dispute is the sum or value of $2000 and arising under the Constitution or laws of the United States, and con-

ceding that this court in *Wiley* v. *Sinkler*, 179 U. S. 57, and *Swafford* v. *Templeton*, 185 U. S. 487, recognized that the deprivation of a man's political rights (those cases had reference to the elective franchise) may properly be alleged to have the required value in money, the court says: "Assuming that the allegation [of value] should have been made in a case like this, the objection to its omission was not raised in the Circuit Court, and as it could have been remedied by amendment, we think it unavailing. The certificate was made *alio intuitu*. There is no pecuniary limit on appeals in this court under section 5 of the act of 1891, c. 517, 26 Stat. 826, 828 ; *The Paquete Habana*, 175 U. S. 677, 683, and we do not feel called upon to send the case back to the Circuit Court that it might permit the amendment."

It seems to me that this question as to the value of the matter in dispute was sufficiently raised in the Circuit Court; for the demurrer to the bill was, in part, on the ground that the facts stated did not make a case "within the jurisdiction of the court." But, passing that view, I come to a more serious matter. In cases of which a Circuit Court may take original cognizance, the value of the matter in dispute—which is mentioned in the statute in advance of any reference to the nature of the subject of the action—is as essential to jurisdiction as is the nature of the subject of such dispute. And yet the court says that an objection that the record from the Circuit Court does not show an allegation as to value is unavailing here, even if such allegation ought to have been made. That is a new, and I take leave to say a startling, doctrine. Must not this court upon its own motion decline to pass upon, indeed, has this court, strictly speaking, jurisdiction to consider and determine, the merits of a case coming from the Circuit Court, unless it *affirmatively* appears *from the record* that the case is one of which that court could take cognizance? Is not a suit presumably without the jurisdiction of a Circuit Court, unless the record shows it to be one of which that court may take cognizance? Is it of any consequence that the parties did not raise the question of jurisdiction in the Circuit Court? If the record shows nothing more than that the case

arises under the Constitution and laws of the United States, and if it does not affirmatively appear, in some appropriate way, that the value of the matter in dispute is up to the required amount, has this court jurisdiction to consider and determine the merits of the case?

Let us look at some of the adjudged cases upon the general subject of the jurisdiction of the Federal courts, and see what the duty of this court is when its own jurisdiction does not affirmatively appear from the record, or when it does not appear that the Circuit Court had jurisdiction.

In *Sizer* v. *Many*, 16 How. 97, 103, which was an action for the infringement of letters patent: "The sum taxed being less than $2000 no writ of error will lie under the act of 1789. This act *gives no jurisdiction to this court* over the judgment of a Circuit Court, where the judgment is for less than that sum. . . . The writ of error must therefore be dismissed for want of jurisdiction." In *Brown* v. *Shannon*, 20 How. 55, 58, which was an action to enforce the specific execution of a contract in relation to the use of a patent right: "The sum mentioned in the bill . . . being less than $2000, whatever errors may be apparent in the proceedings and decree of the court below, we have yet *no power* under the act of Congress to revise and correct them, and the appeal *must* be dismissed." In *Richmond* v. *City of Milwaukee*, 21 How. 80, 82, which was an action to prohibit the conveyance of certain lots: "There is nothing in the allegations of the parties or in the evidence to show that the value of the lots in question exceeded $2000, nor anything from which it can be inferred. The appeal must therefore be dismissed *for want of jurisdiction in this court.*" In *Pratt* v. *Fitzhugh*, 1 Black, 271, 273, which was a cause in admiralty: "Without the fact of value being shown on the record, or by evidence *aliunde,* the court *has no jurisdiction.*" In *Walker* v. *United States*, 4 Wall. 163, 165, which was an action on a judgment for money: "*This court has no appellate jurisdiction,* except such as is defined by Congress. The act of Congress limits this jurisdiction to cases where the matter in dispute exceeds $2000. We can no more take jurisdiction where the matter does not exceed than we can where it is less

than that sum. The amount in controversy in the case before us, ascertained in conformity with the settled principles of the court, does not exceed two thousand dollars. We have, therefore, *no jurisdiction* of the writ of error, and it *must* be dismissed." In *The Grace Girdler*, 6 Wall. 441, which was an appeal in admiralty : " While it is true that the greater part of the loss fell upon Lockwood as owner of the Ariel, and her belongings, there is nothing in thè record which shows that the damage sustained exceeded $2000: And *this is essential to jurisdiction.*" In *Ayers* v. *Watson*, 113 U. S. 595, 598, which was an action of trespass to try title to land : " Diverse state citizenship of the parties, *or some other jurisdictional fact prescribed by the second section,* is absolutely essential, and cannot be waived, and the want of it will be error at any stage of the cause, even though assigned by the party at whose instance it was committed."

These cases relate to the jurisdiction of this court under statutes prescribing a certain amount as essential, upon writ of error or appeal, for the review of judgments rendered in the Circuit Court.

Looking now at cases in which the want of jurisdiction in the Circuit Court has been held to preclude this court from going into the merits of the case adjudged, we find in *King Bridge Co.* v. *Otoe County*, 120 U. S. 226, which was an action upon county warrants, this language : " It does not appear that the Circuit Court had jurisdiction of the action. Unless the contrary appears affirmatively from the record, the presumption, upon writ of error or appeal, is that the court below was without jurisdiction." In *Metcalf* v. *Watertown*, 128 U. S. 587, which was an action upon a judgment, and in which case the question was whether an action upon a certain judgment was barred by limitation, this court said : " We are not, however, at liberty to express any opinion upon the question of limitation, if the court, whose judgment has been brought here for review, *does not appear, from the record,* to have had jurisdiction of the case. And whether that court had or had not jurisdiction, is a question which we must examine and determine, *even if the parties forbear to make it, or consent that the case be*

*considered upon its merits.*"  In *Chapman* v. *Barney,* 129 U. S. 677, 681, which was an action for trover : " We are confronted with the question of jurisdiction, which, *although not raised by either party in the court below or in this court,* is presented by the record, and under repeated decisions of this court must be considered."  In *Parker* v. *Ormsby,* 141 U. S. 83 : " Did the court below have jurisdiction of this case ?  If jurisdiction did not affirmatively appear, upon the record, it was error to have rendered a decree, *whether the question of jurisdiction was raised or not in the court below.*  In the exercise of its power, this court, *of its own motion,* must deny the jurisdiction of the courts of the United States, in all cases coming before it, upon writ of error or appeal, where such jurisdiction does not affirmatively appear in the record on which it is called to act."  In *Mattingly* v. *Northwestern Virginia Railroad,* 158 U. S. 53, 57, which was an action to set aside certain conveyances and to foreclose a mortgage : " Although it does not appear that the question of jurisdiction was raised in the court below by any plea or motion, yet as the record failed to affirmatively show jurisdiction, this court must take notice of the defect."

According to the adjudged cases, the first inquiry which this court should make as to any case before it from an inferior Federal court is as to its own jurisdiction.  If jurisdiction does not appear from the record then the writ of error or appeal should be dismissed.  If it is found to have jurisdiction for any purpose, then its next duty is to inquire as to the jurisdiction of the court below.  When the latter court does not appear upon the record to have jurisdiction, then the duty of this court is to reverse the judgment and remand the case to be dismissed for want of jurisdiction.  I say " appear upon the record to have jurisdiction," because, as we have seen, the presumption is that a cause is without the jurisdiction of a Federal court, unless the contrary affirmatively appears.  *Turner* v. *Bank of North America,* 4 Dall. 8 ; *Brown* v. *Keene,* 8 Pet. 115 ; *Ex parte Smith,* 94 U. S. 455 ; *Robertson* v. *Cease,* 97 U. S. 646.  In *Brown* v. *Keene,* Chief Justice Marshall said : " The decisions of this court require that the averment of jurisdiction shall be positive ; that the declaration shall state expressly the fact on which jurisdic-

tion depends. It is not sufficient that jurisdiction may be inferred argumentatively from its averments."

To these cases I will add that of *M. C. & L. M. Railway* v. *Swan,* 111 U. S. 379, 382, in which this court said : " It is true that the plaintiffs below, against whose objection the error was committed, do not complain of being prejudiced by it ; and it seems to be an anomaly and a hardship that the party at whose instance it was committed should be permitted to derive an advantage from it ; but the rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception, which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it."

In the above case of *Holt* v. *Manufacturing Co.,* 176 U. S. 68, which involved a question of the jurisdiction of the Circuit Court, this court said : " In this, as in all cases, if it appears that the Circuit Court had no jurisdiction, *it is the duty of this court to so declare, and enter judgment accordingly.*"

These principles have been expressly affirmed by this court in many other cases. And yet, according to the opinion in this case, if objection is not made in the Circuit Court to its jurisdiction, it will be unavailing to raise that question in this court, and we may proceed to determine the merits of the case. Such a doctrine, I repeat, is a new departure. The court, in effect says, that although it may know that the record fails to show a case within the original cognizance of the Circuit Court, it may close its eyes to that fact, and review the case on its merits. In view of the adjudged cases, I cannot agree that the failure of parties to raise a question of jurisdiction will relieve this court of its duty to raise it upon its own motion. The con-

trary view cannot be justified. This court may not assume jurisdiction to do that which it has no authority to do.

It will be appropriate to observe that the Circuit Court in effect propounds the question whether it had jurisdiction of this case upon the record before it. That question necessarily involves the inquiry whether subdivision 16 of § 629 and § 1979 of the Revised Statutes were repealed by later acts. But that point is left undecided, the court only assuming that those statutory provisions are still in force, but it does not say whether the suit could be maintained under those sections or under either of them without allegation or proof as to the value of the matter in dispute. Nor does the court distinctly adjudge whether the case is embraced by the act of 1887-8; but simply *assuming* that the allegation of value should have been made in the bill, it proceeds to consider the case upon its merits. The question of the jurisdiction of the Circuit Court under the acts of Congress, the one certified, is thus left in the air, and the case is examined and disposed of upon its merits just as if jurisdiction of the Circuit Court appeared upon the record. There is no claim that the essential fact of value appears anywhere in the record, either in the bill or otherwise. Consequently, as already said, this court is without power to consider the merits.

The court says that the plaintiff had the right to appeal directly to this court under section 5 of the act of 1891, and that the certificate was unnecessary to found the jurisdiction of this court and could not narrow it. But it does not follow that this court can review the merits of the case, if the Circuit Court does not appear to have had jurisdiction to determine the rights of the parties.

My views may be summed up as follows: 1. This case is embraced by that clause of the act of 1887-8, which provides that the Circuit Court shall have original cognizance "of all suits of a civil nature, . . . where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the Constitution or laws of the United States." 2. That the sum or value of the matter in dispute in such cases is jurisdictional under the statute. 3. That as it did not appear from the record, in any way, that the matter

in dispute exceeded in value the jurisdictional amount, the Circuit Court could not take cognizance of the case or dispose of it upon its merits. 4. That least of all does this court have jurisdiction to determine the merits of this case. 5. That when a case comes here upon a certificate as to the jurisdiction of a Circuit Court, this court may not forbear to decide that question, and determine the merits of the case upon a record which does not show jurisdiction in the Circuit Court.

As these are my views as to the jurisdiction of this court, upon this record, I will not formulate and discuss my views upon the merits of this case. But to avoid misapprehension, I may add that my conviction is that upon the facts alleged in the bill (if the record showed a sufficient value of the matter in dispute) the plaintiff is entitled to relief in respect of his right to be registered as a voter. I agree with MR. JUSTICE BREWER that it is competent for the courts to give relief in such cases as this.

### SENA v. UNITED STATES.

No. 40. Petition for modification of judgment and for rehearing. June 1, 1903.

The opinion of the court in this case is reported *ante*, p. 233.

MR. JUSTICE BROWN : *It is ordered by the court* that the decree of affirmance in this case be amended by adding the following words: " so far as such decree orders that the petition be dismissed, but without prejudice to such further proceedings as petitioner may be advised to take."