CONTINENTAL NUT COMPANY, a corporation, Rosenberg Bros. & Co., Inc., a corporation, and Harter Packing Company, a corporation, Plaintiffs,

v.

Ezra T. BENSON, Secretary of Agriculture of the United States, Defendant.

Civ. No. 36320.

United States District Court
N. D. California, S. D.

Sept. 26, 1958.

Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiff.

Robert H. Schnacke, U. S. Atty., San Francisco, Cal., for defendant.

OLIVER J. CARTER, District Judge.

The plaintiff corporations have filed with this Court a Bill in Equity, pursuant to Section 8c(15) (B) of the Agricultural Adjustment Act of 1933, as reenacted and amended by the Agricultural marketing Agreement Act of 1937 [7 U.S.C.A. § 601 et seq.], hereinafter refered to as the "Act". They have petitioned for a review of a ruling by the defendant Secretary of Agriculture, and for a modification of his order.

Section 8c(15) (B) of the Act [7 U.S. C.A. § 608c(15) (B)] vests in the District Courts of the United States, in any district in which a handler subject to the act is an inhabitant, jurisdiction in equity to review rulings made by the Secretary of Agriculture upon timely petitions by handlers subject to the questioned order. Each of the plaintiffs in this action has its principal place of business within the Northern District of California.

The plaintiffs are handlers of almonds grown in California, as that term is used in Marketing Order No. 9 [7 C.F.R. 909.1 et seq.], which order was promulgated

in 1950 by the then Secretary of Agriculture of the United States under the authority of the aforementioned basic Act.

The Secretary of Agriculture is empowered to make rulings which determine the percentage of the annual crop which is salable; correlatively, he determines the percentage of the annual crop which is deemed surplus. Salable almonds may be sold on the domestic market, whereas surplus almonds are usually sold to the foreign market; inasmuch as the domestic prices are ordinarily higher than foreign prices, the handlers sell as much as possible of their salable almonds on the domestic market. The purpose for the establishment of the salable and surplus percentages is to establish and maintain orderly marketing conditions for agricultural commodities.

During the 1954–1955 crop year, the Secretary of Agriculture, acting pursuant to the aforementioned Order No. 9, initially established the salable and surplus percentages for the crop year at seventy-five per cent and twenty-five per cent, respectively, by his order effective June 30, 1954. However, by a subsequent order during the same crop year, effective April 20, 1955, the salable percentage of almonds was increased to eighty-five per cent, and the surplus percentage decreased to fifteen per cent.

At the time of the issuance of this latter order, the plaintiff handlers had already sold more than fifteen per cent of the 1954–1955 crop as surplus, and were unable to take advantage of the order which increased the salable percentage of almonds. Only by a modification of the Secretary's order could the plaintiff handlers realize the highest possible profit on the 1954–1955 crop.

The contention of the plaintiff handlers is that the Secretary of Agriculture acted in an arbitrary manner when he revised the percentages at a late date in the crop year and, in the words of the plaintiffs, "ignore (d) sales of surplus almonds during the year to that date." They assert that his refusal to modify the order was unjustified in view of the evidence presented by them at the administrative hearing, and contend that unless the Court makes a ruling that they will be without a remedy.

Congress did provide an administrative remedy for the plaintiffs, and, pursuing that remedy, they filed a petition with the defendant under the provisions of 7 U.S.C.A. § 608c(15) (A), in which they alleged that the aforementioned order of April 20, 1955, was not in accordance with law; they requested that the order be modified. In an amended complaint, the plaintiffs requested that in the alternative to modification of the order, that either an interpretative ruling be issued, or that a declaratory order be made.

A hearing was held, the petition of plaintiffs was dismissed, and all relief denied. A motion for reconsideration was also dismissed. A full and complete report of the proceeding is found in 16 Agricultural Decisions 95.

Pursuant to the provisions of 7 U.S. C.A. § 608c(15) (B), the plaintiffs filed the Bill in Equity with this Court, asking for substantially the same relief prayed for at the hearing reported in 16 A.D. 95, supra.

It is conceded by all of the parties that on April 2, 1957, the time of the filing of this Bill in Equity, the entire crop of almonds for the year 1954–1955 had been sold into the channels of trade. At the hearing conducted by the Secretary of Agriculture, it was suggested that the question had become moot because the crop year in question had passed and because the order had, by its own terms, expired. In deciding that the question had not become moot, the Examiner stated:

"Moreover, it is equally clear that unless the rights of the parties under the order here complained of are determined the situation presented on the record may again arise with-

out possible remedy. We think, in these circumstances, that even though we are unable to grant the specific relief prayer in the original petition, our duty is to determine the questions presented." 16 A.D. 95, 106.

From the foregoing, it is obvious that the quasi-judicial officer proceeded to take evidence and make findings of fact and conclusions of law in order to establish a precedent for hypothetic future situations, in spite of the fact that he was, in his words, "unable to grant the specific relief prayer in the original petition."

██ Whatever may be the function of the person empowered to conduct the administrative proceeding prescribed in the Act, it is not the duty of the Court to determine a moot, hypothetical or abstract question. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688. It is beyond the power of the Court to make any order now which would be able to put more almonds of the 1954–1955 crop into to-day's domestic market. Such an order would, in the words of Mr. Justice Holmes, be but "a mere declaration in the air." Giles v. Harris, 189 U.S. 475, 486, 23 S.Ct. 639, 642, 47 L.Ed. 909. It is not within the province of the Court to make interpretative rulings when there is no actual controversy at bar; such is the case.

██ The plaintiffs have complained that because of the lengthy procedure which is prerequisite to coming into this Court, it is impossible to make a timely presentation of a question such as this under the provisions of 7 U.S.C.A. § 608c (15) (B) while the subject matter in controversy is still in existence. The issue raised is a political one, rather than a legal one, and it is not for this Court to look behind the wisdom of congressional legislation. An argument based upon an allegedly unreasonable time provided by the Congress does not come within the scope of justiciable controversy.

" * * * the question of a reasonable time in many cases would involve, as in this case it does involve, an appraisal of a great variety of relevant conditions, political, social and economic, which can hardly be said to be within the appropriate range of evidence receivable in a court of justice and as to which it would be an extravagant extension of judicial authority to assert judicial notice as the basis of deciding a controversy * * *." Coleman v. Miller, 307 U.S. 433, 59 S.Ct. 972, 982, 83 L.Ed. 1385.

██ The plaintiffs have suggested that effective relief could be granted to them if the order of April 20, 1955, were modified, by the resultant creation of a market for surplus credits. In other words, accounts among the almond growers which have long since been settled would have to be reopened, and the plaintiffs would be in a position to profit from surplus credits which represent a crop which was disposed of several years ago. Such action on the part of the Court would not appear to be one which would effectuate the purpose of the Act; indeed, such an order by the Court would be a disruption of the orderly exchange of commerce, and would but create chaos and uncertainty in an agricultural area where stability should be maintained.

Consequently, inasmuch as it is the opinion of the Court that the issue at bar is moot, and that there is no justiciable controversy before the Court, the Court cannot look into the propriety of the defendant's ruling.

Accordingly, it is the order of the Court that the action be, and the same hereby is dismissed.