## WILEY *v.* SINKLER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DIS-
TRICT OF SOUTH CAROLINA.

No. 2.   Argued December 8, 1899.—Decided October 15, 1900.

The right to vote for members of Congress is not derived merely from the
constitution and laws of the State in which they are chosen, but has its
foundation in the Constitution and laws of the United States.

The Circuit Court of the United States has jurisdiction of an action brought
against election officers of a State to recover damages, alleged to exceed
the sum of $2,000, for refusing the plaintiff's vote for a member of Con-
gress.

In an action against election officers of the State of South Carolina for re-
fusing the plaintiff's vote at an election, the declaration must allege that
the plaintiff was a registered voter, as is required by the constitution
and laws of the State.

THIS was an action, brought March 11, 1895, in the Circuit
Court of the United States for the District of South Carolina,
by a resident of the city of Charleston in that State, against
the board of managers of a general election at a ward and pre-
cinct in that city, to recover damages in the sum of $2500 for
wrongfully and wilfully rejecting his vote for a member of
the House of Representatives of the United States for the State
of South Carolina on November 6, 1894.   The allegations of the
complaint were as follows :

" I. That the plaintiff is and was on the 6th day of Novem-
ber, 1894, a resident of the city and county of Charleston in
the State of South Carolina; and that he had been a resident
of said State for a period of more than twelve months next pre-
ceding said 6th day of November, 1894, and a resident of said
city and county for more than sixty days next preceding said
day ; and that under the constitution and laws of the said State
of South Carolina and the Constitution and laws of the United
States the said plaintiff is and was at the time aforesaid twenty-
one years of age, and is and was in every other respect a duly
qualified elector of said State, and is and was on the said 6th day

of November, 1894, entitled to vote for a member of the House of Representatives of the United States from said State of South Carolina.

"II. That the defendants were on the day and year aforesaid the board of managers of the Federal election at the first election precinct in the sixth ward of said city of Charleston in said county and State; that, as the plaintiff has been informed and believes, the said defendants were duly appointed and qualified as such managers; and that they were present at the polling place in the said election precinct on the said 6th day of November, 1894, and during all the time the polls were open on said day were there, acting as such board of managers of the Federal election.

"III. That the proper election precinct at which the said ' plaintiff was entitled to vote is the said first precinct in the sixth ward of the city and county of Charleston in the State aforesaid; and that on the said 6th day of November, 1894, and while the polls were open for voting purposes, the said plaintiff presented himself at the polling place in said election precinct, and then and there offered to vote and cast his ballot for one of the candidates for the office of member of the House of Representatives of the United States for the State of South Carolina in the Fifty-fourth Congress; and the plaintiff further avers that he then and there had ready the proof of his qualifications as such Federal elector as aforesaid.

"IV. That the said defendants unlawfully, wilfully and injuriously refused to permit the said plaintiff to vote at said precinct and at said Federal election which was there held according to law, on said 6th day of November, 1894, for one of the candidates for member of said House of Representatives of the United States for the State aforesaid; and wrongfully and wilfully, and without any lawful cause or excuse, rejected the plaintiff's said vote; to his damage two thousand and five hundred dollars.

"Wherefore the plaintiff demands judgment against the defendants for the said sum of two thousand and five hundred dollars, and for the costs of this action."

The defendants demurred to the complaint, upon the following grounds:

First. That the court had no jurisdiction of the action, because it did not affirmatively appear on the face of the complaint that a Federal question was involved; and because it appeared on the face of the complaint that a verdict for $2000 would be so excessive that the court would be required to set it aside.

Second. That the complaint did not state facts sufficient to constitute a cause of action, because by section 2008 of the Revised Statutes of the United States an action must be brought for a penalty, and not for damages; and because the complaint did not state facts sufficient to constitute a cause of action, either under that statute, or at common law.

The court, without considering the other grounds, sustained the demurrer, and dismissed the complaint, because it did not state facts sufficient to constitute a cause of action, in that it failed to state that the plaintiff was a duly registered voter of the State of South Carolina. The plaintiff sued out a writ of error from this court.

The material parts of the constitution and laws of South Carolina, referred to in argument, are stated in the margin.[1]

---

[1] In the constitution of 1868, the first article, entitled "Declaration of Rights," contains the following provisions:

"SECT. 31. All elections shall be free and open, and every inhabitant of this Commonwealth, possessing the qualifications provided for in this constitution, shall have an equal right to elect officers and be elected to fill public office."

"SECT. 33. The right of suffrage shall be protected by laws regulating elections, and prohibiting, under adequate penalties, all undue influences from power, bribery, tumult or improper conduct."

The eighth article of the same constitution, entitled "Rights of Suffrage," contains the following provisions:

"SECT. 2. Every male citizen of the United States, at the age of twenty-one years and upwards, not laboring under the disabilities named in this constitution, without distinction of race, color or former condition, who shall be a resident of this State at the time of the adoption of this constitution, or who shall thereafter reside in this State one year, and in the county in which he offers to vote sixty days, next preceding any election, shall be entitled to vote for all officers that are now or hereafter may be elected by the people, and upon all questions submitted to the electors at any elections: Provided, that no person shall be allowed to vote or hold office who is now or hereafter may be disqualified therefor by the Consti-

Opinion of the Court.

*Mr. Charles A. Douglass* for plaintiff in error.

*Mr. William A. Barber* for defendants in error.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

This case involves the construction and application of the Constitution of the United States, and is therefore rightly brought directly from the Circuit Court of the United States

---

tution of the United States until such disqualification shall be removed by the Congress of the United States : Provided, further, that no person, while kept in any almshouse or asylum, or of unsound mind, or confined in any public prison, shall be allowed to vote or hold office.

"SECT. 3. It shall be the duty of the general assembly to provide from time to time for the registration of all electors."

"SECT. 7. Every person entitled to vote at any election shall be eligible to any office which now is, or hereafter shall be, elective by the people in the county where he shall have resided sixty days previous to such election, except as otherwise provided in this constitution or the Constitution and laws of the United States.

"SECT. 8. The general assembly shall never pass any law that will deprive any of the citizens of this State of the right of suffrage, except for treason, murder, robbery or duelling, whereof the person shall have been duly tried and convicted." This section was amended in 1882 by substituting,, for the word " robbery," the words " burglary, larceny, perjury, forgery, or any other infamous crime.".

The Revised Statutes of South Carolina of 1893 contain the following provisions:

"SEC. 162. The general elections for Federal, State and county officers in this State shall be held on the first Tuesday following the first Monday in November in every second year, reckoning from the year one thousand eight hundred and seventy."

"SEC. 131. Every male citizen of the United States, of the age of twenty-one years and upwards, not laboring under the disabilities named in the constitution, without distinction of race, color or former condition, who shall have been a resident of the State for one year, and in the county in which he offers to vote for sixty days, next preceding any general election, shall be entitled to vote: Provided, that no person, while kept in any almshouse or asylum, or of unsound mind, or confined in any public prison, or who shall have been convicted of treason, murder, burglary, larceny, perjury, forgery, or any other infamous crime, or duelling, shall be allowed to vote.

to this Court, under the act of March 3, 1891, c. 517, § 5, cl. 4. 26 Stat. 828.

The right to vote for members of the Congress of the United States is not derived merely from the constitution and laws of the State in which they are chosen, but has its foundation in the Constitution of the United States.

---

"Sec. 132. All electors of the State shall be registered; and no person shall be allowed to vote at any election hereafter to be held, unless he shall have been heretofore registered in conformity with the requirements of chapter 7 of the General Statutes of 1882, and acts amendatory thereof, or shall be registered as herein required."

Sections 133–136 provide for the appointment of a supervisor and two assistant supervisors of registration in each county, and establish registration precincts.

"Sec. 137. After every general election, the registration books shall be opened, for registration of such persons as shall thereafter become entitled to register, on the first Monday in each month, until the first day of July preceding a general election, when the same shall be closed until such general election shall have taken place."

Section 138 requires the books of registration to be deposited and safely kept in the office of a certain clerk or registrar.

"Sec. 139. The supervisor shall determine as to the legal qualifications of all applicants for registration by summary process, requiring oath, evidence, or both, if he deem proper, subject to revision by the assistant supervisors and himself in all cases where he has refused to register an applicant. From their decision any applicant who is rejected shall have the right to a review thereof by the circuit court, provided he give notice in writing to the supervisor of his application for such review, and the grounds thereof, within five days from the date of his rejection, and commence his proceedings within ten days from the service of said notice.

"Sec. 140. Any person coming of age, and otherwise qualified as an elector, may appear before the supervisor on any day on which the books are opened as aforesaid, and make oath (which the supervisor is hereby authorized to administer) as to his name, age, occupation and place of residence ; and if the supervisor find him qualified, he shall enter his name upon the registration book of the precinct in which he resides. Such persons shall have the right of appeal, as provided in the last section, if the supervisor shall not find him qualified.

"Sec. 141. In case a person shall not be of age to qualify him as an elector on the day of the closing of the books of registration before any general election, but shall be of such age as will qualify him as such elector before the said general election, and shall appear before the supervisor of registration and take oath thereto, the supervisor, if he shall find him qualified, shall enter his name upon the registration book as aforesaid."

This is clearly and amply set forth in *Ex parte Yarbrough,* 110 U. S. 651, in which this court, speaking by Mr. Justice Miller, upheld a conviction in a Circuit Court of the United States under sections 5508 and 5520 of the Revised Statutes for a conspiracy to intimidate a citizen of the United States in the exercise of his right to vote for a member of Congress; and answered the proposition " that the right to vote for a member of Congress is not dependent upon the Constitution or laws of the United States, but is governed by the law of each State respectively," as follows :

" But it is not correct to say that the right to vote for a member of Congress does not depend on the Constitution of the United States. The office, if it be properly called an office, is created by that Constitution and by that alone. It also declares how it shall be filled, namely, by election. Its language is ' The House of Representatives shall be composed of members chosen every second year by the people of the several States, and the electors in each State shall have the qualifications requisite for electors of the most numerous branch of the state legislature.' 'Art. 1, sec. 2. The States, in prescribing the qualifications of voters for the most numerous branch of their own legislatures, do not do this with reference to the election for members of Congress. Nor can they prescribe the qualification for voters for those *eo nomine.* They define who are to vote for the popular branch of their own legislature, and

---

Section 142 provides that " each elector registered as aforesaid shall thereupon be furnished by the supervisor with a certificate, which shall contain a statement of his age, occupation and place of residence, as entered in the said registration book, and which certificate shall be signed by the said supervisor ; and no person shall be allowed to vote at any other precinct than the one for which he is registered, nor unless he produces and exhibits to the managers of election such certificate ;" and the form of such certificate is prescribed.

By sections 146–149 an elector who changes his place of residence must surrender his certificate of registration and take out a new certificate; and by section 50, if an elector loses his certificate, he may, upon application made at least thirty days before the next general election, and upon complying with certain stringent provisions as to proof of the loss, obtain a new certificate.

the Constitution of the United States says the same persons shall vote for members of Congress in that State. It adopts the qualification thus furnished as the qualification of its own electors for members of Congress. It is not true, therefore, that electors for members of Congress owe their right to vote to the state law in any sense which makes the exercise of the right to depend exclusively on the law of the State." 110 U. S. 663.

The court then, referring to the statement of Chief Justice Waite in *Minor* v. *Happersett*, 21 Wall. 162, 178, that " the Constitution of the United States does not confer the right of suffrage upon any one," explained that statement as follows: " But the court was combating the argument that this right was conferred on all citizens, and therefore upon women as well as men. In opposition to that idea, it was said the Constitution adopts, as the qualification of voters for members of Congress, that which prevails in the State where the voting is to be done; therefore, said the opinion, the right is not definitely conferred on any person or class of persons by the Constitution alone, because you have to look to the law of the State for the description of the class. But the court did not intend to say that, when the class or the person is thus ascertained, his right to vote for a member of Congress was not fundamentally based upon the Constitution, which created the office of member of Congress, and declared it should be elective, and pointed to the means of ascertaining who should be electors." 110 U. S. 664.

The Circuit Court of the United States has jurisdiction, concurrent with the courts of the State, of any action under the Constitution, laws or treaties of the United States, in which the matter in dispute exceeds the sum or value of $2000. Act of August 13, 1888, c. 866 ; 25 Stat. 433.

This action is brought against election officers to recover damages for their rejection of the plaintiff's vote for a member of the House of Representatives of the United States. The complaint, by alleging that the plaintiff was at the time, under the constitution and laws of the State of South Carolina and the Constitution and laws of the United States, a duly qualified

elector of the State, shows that the action is brought under the Constitution and laws of the United States.

The damages are laid at the sum of $2500. What amount of damages the plaintiff shall recover in such an action is peculiarly appropriate for the determination of a jury, and no opinion of the court upon that subject can justify it in holding that the amount in controversy was insufficient to support the jurisdiction of the Circuit Court. *Barry* v. *Edmunds,* 116 U. S. 550; *Scott* v. *Donald,* 165 U. S. 58, 89; *Vance* v. *W. A. Vandercook Co.,* 170 U. S. 468, 472; *North American Co.* v. *Morrison,* 178 U. S. 262, 267.

The Circuit Court therefore clearly had jurisdiction of this action, and we are brought to the consideration of the other objections presented by the demurrer to the complaint.

The objection that the only remedy in that court was by suit for a penalty under section 2008 of the Revised Statutes is answered by the repeal of that section, before this action was brought, by the act of Congress of February 8, 1894, c. 25. 28 Stat. 36.

But the objection that the complaint failed to state that the plaintiff was a duly registered voter of the State of South Carolina (which was the ground of the judgment below in favor of the defendants) is a more serious one.

By the constitution of South Carolina, every male citizen, of the age of twenty-one years and upwards, who has resided in the State for one year, and in the county where he offers to vote for sixty days, next preceding any election, and is not disqualified by the Constitution of the United States, nor a lunatic or a prisoner, nor been convicted of an infamous crime or of duelling, is entitled to vote for all officers elected by the people. Art. 1, § 31; art. 8, §§ 2, 8. That constitition, in art. 8, § 3, also makes it the duty of the legislature to provide from time to time for the registration of all electors.

The Revised Statutes of South Carolina of 1893 provide, in § 131, that every man, not laboring under the disabilities named in the constitution of the State (repeating all the qualifications and the disabilities mentioned in that constitution) shall be entitled to vote; and further provide, in § 132, that all electors of

the State shall be registered, and that no person shall be allowed to vote at any election unless theretofore registered as required by those statutes or by previous laws.

The constitution of the laws of the State thus require that, in order to entitle any one to have his vote received at any election, he must not only have the requisite qualifications of an elector, but he must have been registered. By elementary rules of pleading, both these essential requisites must be distinctly alleged by the plaintiff in any action against the managers of an election for refusing his vote. *Murphy* v. *Ramsey*, 114 U. S. 15, 37; *Blanchard* v. *Stearns*, 5 Met. 298, 302.

The complaint in this case alleges that the plaintiff was a duly qualified elector; but it contains no allegation that he was ever registered as such. Because of this omission, the complaint does not state facts sufficient to constitute a cause of action.

It was argued, in behalf of the plaintiff, that the registration act of South Carolina was unconstitutional, because it allowed for registration only one day in each month between the day of a general election in November and the first day of July before the next general election; required the registration books to be closed from such first day of July for four months, until the ensuing election day; and thus in effect required each voter to reside in the county for one hundred and twenty days (whereas the constitution required only sixty days) before the election, and otherwise unreasonably impeded the exercise of the constitutional right of voting; that the only exception allowed was in the case of voters coming of age during those four months, and there was no exception in the case of electors who, by reason of sickness or absence or other good and sufficient cause, did not or could not have registered before the first day of July.

In the case in the Supreme Court of South Carolina of *Butler* v. *Ellerbe*, 44 So. Car. 256, cited at the bar, the Chief Justice expressed his opinion that the registration act of the State was unconstitutional; but the majority of the judges declined to express any opinion upon that question, because they thought it unnecessary for the decision. Nor should this court undertake to decide it in the present case.

Passing by the difficulty of subjecting election officers to an

action for damages for refusing a vote which the statute under which they are appointed forbids them to receive, it is by no means clear, taking into consideration all the constitutional and statutory provisions upon the subject, that the construction contended for is the true construction of the statute.

But, even upon that construction, the plaintiff does not show that he is in a position to impugn the constitutionality of the statute. It is only on the day when this vote was refused, that he alleges that he had resided in the State for a year and in the county for sixty days, and was of age and otherwise a qualified elector. He does not allege when he first became qualified. So far as appears, he may have become of age and otherwise qualified but a few days before the election day on which he tendered his vote, in which case he would confessedly, by the specific provision of § 141, have been entitled to apply for registration. Yet he does not allege that he ever was registered, or made any application to be registered.

The provisions of the statutes of 1893 requiring registered voters to obtain certificates from the supervisors, the provisions for registration in earlier statutes, and the provisions of the statute of December 24, 1894, for calling a constitutional convention, enacted since the date of the election here in question, were largely commented on, and their validity impugned, in the argument for the plaintiff in error. But the validity of none of those provisions is involved in the decision of this case.

*Judgment affirmed.*