ACZEL et al. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit.   February 3, 1916.)

No. 2269.

1. CONSPIRACY ⟨key⟩28—PREVENTING VOTING AT CONGRESSIONAL ELECTION—
SCOPE OF CIVIL RIGHTS—STATUTE.
The right of a qualified elector to vote at an election for Members of Congress or United States Senators is a right secured to him by the Constitution and laws of the United States, and a conspiracy to deprive an elector of such right constitutes an offense, under Criminal Code (Act March 4, 1909, c. 321) § 19, 35 Stat. 1092 (Comp. St. 1913, § 10183).

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 40, 41; Dec. Dig. ⟨key⟩28.]

2. CONSPIRACY ⟨key⟩43(6)—CONSPIRACY TO INJURE PERSONS IN EXERCISE OF CIV-
IL RIGHTS—INDICTMENT.
A count of an indictment which aptly charges a conspiracy by defendants to injure and oppress electors named in the free exercise of their right to vote at an election for United States Senator and Representative in Congress is not bad because it also charges that a further object of the conspiracy was to injure and oppress certain of the citizens in the exercise of their right to act as election officers and to be free from arrest without due process of law, whether or not the latter charges alone state an offense under Criminal Code, § 19.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 86; Dec. Dig. ⟨key⟩43(6).]

3. CONSPIRACY ⟨key⟩43(6)—CONSPIRACY TO INJURE PERSONS IN THE EXERCISE
OF CIVIL RIGHTS—INDICTMENT.
An indictment under Criminal Code, § 19, charging defendants with conspiracy to injure, oppress, and intimidate persons named and other persons unknown, alleged to be "qualified voters and entitled to vote at said election," in the exercise of their right to vote at an election for Senator and Representative in Congress, is not insufficient because it does

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not contain an averment that such persons were registered, which under the law of the state was required to entitle them to vote.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 86; Dec. Dig. ☞43(6).]

4. CONSPIRACY ☞43(6)—INDICTMENT—DESCRIPTION OF OFFENSE.

In an indictment for conspiracy to do an unlawful act, the unlawful act which is the object of the conspiracy is not required to be set forth with such particularity as in case of a prosecution for the commission of the substantive offense.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 86; Dec. Dig. ☞43(6).]

5. CRIMINAL LAW ☞1134(3)—APPEAL AND ERROR—REVIEW.

Where one count of an indictment under which defendants were convicted is good, and the sentence is no greater than could lawfully be imposed upon such count, the question of the sufficiency of other counts becomes immaterial in a reviewing court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2989, 2990, 3056; Dec. Dig. ☞1134(3).]

In Error to the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Criminal prosecution by the United States against Alexander Aczel, Donn M. Roberts, William Crockett, George Ehrenhardt, John E. Green, Charles Houghton, Harry Montgomery, Hilton Redman, Eli H. Redman, Elmer Talbot, Lewis Nunley, and others. Judgment of conviction, and defendants named bring error. Affirmed.

Indictment was returned in the District Court for the District of Indiana against 126 persons for an offense in respect to the general election held in Vigo county, Ind., November 3, 1914. Under the indictment 115 of those indicted were arrested, and on arraignment 83 of these pleaded guilty, 5 not guilty, and 27 (including plaintiffs in error) filed demurrers to the indictment. The court overruled the demurrers, and the demurrants thereupon pleaded not guilty. After a trial lasting about a month, a verdict of guilty was found against 27 of the defendants. Motion for new trial and in arrest of judgment being overruled, judgment was rendered. The eleven who prosecuted the writ of error herein were each sentenced to imprisonment in the penitentiary on each of the four counts of the indictment; the longest period of sentence being in each case under the first count, where as to any defendant the terms fixed under the several counts differ. Fine was imposed on each defendant under the first count only. As to each defendant the sentence of imprisonment under the several counts was made concurrent, and not cumulative. There is no bill of exceptions, and the only question raised by the assignment of errors or presented by counsel is as to the sufficiency of the indictment.

The indictment is voluminous, occupying as it does 60 pages of the printed transcript. It is stated in condensed form in the opinion by Judge Anderson in passing on the demurrers, as reported in United States v. Aczel et al. (D. C.) 219 Fed. 917, pages 918 to 927. In view of the errors assigned and the propositions presented and urged here, still briefer statement of the indictment will suffice. There are four counts.

The first charges a violation of section 19 of the Criminal Code (Rev. Stat. U. S. § 5508, Comp. St. 1913, § 10183), which, so far as here material, is as follows: "If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same, * * * they shall be fined not more than five thousand dollars and imprisoned not more than ten years. * * *" It

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

alleges that on September 1, 1914, the defendants conspired together to injure, oppress, threaten and intimidate citizens named, and others whose names were unknown, in the free exercise and enjoyment of the rights and privileges secured to them by the Constitution and laws of the United States, viz. the right to vote for a candidate for United States Senator and Representative in Congress at the general election to be held November 3, 1914, and that as part of such conspiracy they further conspired to injure and oppress certain of said citizens in their right to act as judges, clerks and inspectors on election boards at said election, and in the right of said citizens and voters to be secure in their personal liberty, and freedom from arrest without due process of law.

It is charged that the persons alleged to have been conspired against were qualified voters, entitled to vote at such election and to serve as election officers thereat; their age, residence and citizenship as required by law for voting and serving as such election officers being stated. But it is not stated that they were registered, as is required of voters in Indiana before they may vote, nor that those to be deprived of the right to act as election officers had no wager or money bet on the result of the election, and were not related to any candidate for office at such election—the Indiana election laws providing that those having any wager or money bet on the result of the election, or who are related in specified degree to any such candidates, may not act in certain capacities as election officers. In considerable detail the plan of the alleged conspiracy is set out, including the intended use by the alleged conspirators of firearms, threats, intimidation of the voters, causing others to vote upon their names and in their stead, fraudulent manipulation of voting machines, and the like, in order to prevent the citizens from voting, and the use of force, threats, intimidation and firearms to prevent their acting as election officers, and the arrest of said citizens without process of law, for no offense and confine them in detention cells and jails, certain of said defendants pretending to so act in their official capacities as officers of the state of Indiana, which they then respectively were, viz. sheriff of said Vigo county, and mayor, chief of police, assistant chief of police and policemen of the city of Terre Haute. The count charges that in pursuance of the conspiracy the persons named were prevented from voting at the election, and that certain of them were preventd from acting as such election officers, and certain of them arrested and placed in jail and detention cell, without due process of law.

The second count charges a conspiracy under section 37 to defraud the United States by committing a willful fraud upon certain enumerated laws of the United States, through obstructing the administration of such laws, and bringing about their maladministration, by fraudulently procuring a certificate of election as congressman for one not so elected, and foisting upon Congress as a member thereof such person to be so fraudulently declared elected, and defrauding the United States out of a congressman's annual salary.

The third count charges conspiracy under section 37 "to commit an offense against the United States," the offense so to be committed being a violation of section 215 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1096, 1130 [Comp. St. 1913, §§ 10201, 10385]), relating to "use of the mails to defraud"; the scheme charged being one to fraudulently collect money from saloon keepers and keepers of disorderly houses through various fraudulent promises and pretenses, and thereby raising a fund to corrupt the electorate, and thus influence and control the election, and to use the mails to carry out the scheme. Many overt acts are charged in this and the preceding count.

Count 4 charges a direct violation of section 215, alleging a scheme or artifice to defraud very much as in count 3, and charging that in the execution of the scheme one of defendants deposited a certain letter in the United States post office at Terre Haute.

Under the views expressed in the opinion, it is not essential that the last three counts be more fully set out.

Elias D. Salsbury, of Indianapolis, Ind., for plaintiffs in error.
Frank C. Dailey, of Bluffton, Ind., for the United States.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges

ALSCHULER, Circuit Judge (after stating the facts as above). The sufficiency of the indictment is the only question brought here for determination.

[1] The first of the four counts being predicated on section 19 of the Criminal Code, which makes it a criminal act to "conspire to injure, oppress, threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution and laws of the United States," the validity of the count will depend primarily on whether the infraction therein charged is in respect to any right or privilege which is secured to the citizen by the Constitution and laws of the United States. What are rights of citizens, secured to them by the Constitution and laws of the United States, has been a subject of frequent consideration by the federal courts. Article 1, § 2, of the federal Constitution, provides that:

"The House of Representatives shall be composed of members chosen every second year by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state Legislature."

It has been repeatedly held by the federal courts, and particularly in cases where conspiracies under section 19 were charged, that the right of voters to vote at elections for Member of Congress is a right secured by the Constitution and laws of the United States. Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274; In re Coy, 127 U. S. 731, 8 Sup. Ct. 1263, 32 L. Ed. 274; Wiley v. Sinkler, 179 U. S. 58, 21 Sup. Ct. 17, 45 L. Ed. 84; Swafford v. Templeton, 185 U. S. 487, 22 Sup. Ct. 783, 46 L. Ed. 1005; James v. Bowman, 190 U S. 127, 23 Sup. Ct. 678, 47 L. Ed. 979; United States v. Mosley et al., 238 U. S. 383, 35 Sup. Ct. 904, 59 L. Ed. 1355; Felix v. United States, 186 Fed. 685, 108 C. C. A. 503; United States v. Stone (D. C.) 188 Fed. 836.

From the opinion in the very recent Mosley Case, which involved an indictment under section 19 for conspiracy to injure and oppress citizens of Oklahoma in their right to vote for a Member of Congress, we quote the following:

"It is not open to question that this statute is constitutional, and constitutionally extends some protection, at least, to the right to vote for Members of Congress. Ex parte Yarbrough, 110 U. S. 651 [4 Sup. Ct. 152, 28 L. Ed. 274]; Logan v. United States, 144 U. S. 263, 293 [12 Sup. Ct. 617, 36 L. Ed. 429]. We regard it as equally unquestionable that the right to have one's vote counted is as open to protection by Congress as the right to put a ballot in a box."

Since the adoption of the Seventeenth Amendment to the Constitution, providing for the popular election of United States Senators, and the act of Congress of June 4, 1914, providing a temporary method of electing United States Senators, the right to vote at any such election for United States Senator must be likewise considered a right secured by the Constitution and laws of the United States. Indeed, the applicability of section 19 to conspiracies to injure citizens in their right to vote for Senators and Congressmen at elections where they are to be chosen does not seem here to be controverted, although it appears from the opinion of the District Court rendered in passing on

the demurrers, that the main contention there made in support of the demurrers was that the right to vote for Senators and Members of Congress was not one which was secured by the Constitution and laws of the United States. Possibly the present attitude on this proposition has been influenced by the Mosley Case, supra, the opinion in which has been handed down since the judgment of conviction herein.

[2] But with respect to the right of serving as election officers, and of freedom from arrest without due process of law, it is earnestly insisted on behalf of plaintiffs in error that these are not rights which are secured by the Constitution and laws of the United States, and that as to these section 19 has no application. If the count were grounded wholly on an alleged conspiracy to injure citizens in respect to their rights generally to serve as officers of election, and to be free from arrest without due process of law, as rights secured by the Constitution and laws of the United States rather than by the laws of the states, serious doubt of the validity of such a count might, under the decisions, be well entertained. United States v. Cruikshank et al., 92 U. S. 542, 23 L. Ed. 588; United States v. Harris, 106 U. S. 629, 1 Sup. Ct. 601, 27 L. Ed. 290; Civil Rights Cases, 109 U. S. 3, 3 Sup. Ct. 18, 27 L. Ed. 835; James v. Bowman, 190 U. S. 127, 23 Sup. Ct. 678, 47 L. Ed. 979; Hodges v. United States, 203 U. S. 1, 27 Sup. Ct. 6, 51 L. Ed. 65.

But if it be assumed that, abstractly and generally considered, the right to act as judge, clerk, or inspector of elections, and the right of liberty, and freedom from arrest without due process of law, are not rights which are secured by the Constitution or laws of the United States, but are dependent upon the laws of the state, it must be remembered that the charges in this count with respect to the right to serve as election officers and the right of immunity from arrest without due process of law, are not separate counts of the indictment, but are a part of the first count, and are therein set forth as part of the conspiracy to injure the persons named in their right to vote for a Senator and a Member of Congress. In this relation they cannot be considered in the same light as if, in separate counts, the rights alleged to have been violated were the right to serve as such election officers and the right to immunity from arrest, independent of and disconnected with any purpose thereby to influence the election of a United States Senator or Representative in Congress.

But if they were alleged in the same count as separate purposes of the same conspiracy, without allegation of connection with the conspiracy to injure the voters in their right to vote as set forth in the count, this would not invalidate the count in so far as it may properly charge a conspiracy to injuriously affect citizens in their right to vote for United States Senator and Member of Congress, as a right secured by the Constitution and laws of the United States. If the count aptly charges the defendants with conspiracy in respect to the last-named right, the count would be good, regardless of those other parts of the count which might charge that the conspiracy had also for its object the injury of citizens in respect to other rights.

[3] We are thus brought to the consideration of the specific objection urged against the sufficiency of the count in its statement of the

last-named charge. As to this the only contention made is that the count does not allege that the citizens against whom the conspiracy is alleged to have been formed were registered as required by the laws of Indiana to entitle them to vote at the election. Voting is not obligatory, but one possessing the prescribed qualifications of age, sex, citizenship, and residence is entitled to vote, and may do so if he will comply with those regulations which the law has provided to insure that none do vote but those possessing such qualifications, and that each voter shall have opportunity freely to vote once at the election, and that his vote shall be counted. Registration does not give the individual the required qualifications to constitute him a voter, but is for the due and proper identification of the individual as one possessing those qualifications. In order to vote, he must register at the time and place fixed by law, and must present himself at the legally constituted polling place, receive the ballot as provided by law, retire to a legally designated place and there mark the ballot as the law prescribes, and deposit only the ballot so received in a ballot box supplied according to law. If he neglects or refuses to comply with any of these requirements, he cannot vote. But is he then any the less a voter, or, having voted, does he thereupon cease to be a voter until the next registration day rolls around, when he may again register preparatory to voting at the next general election? In other words, is he to be considered a voter only for the brief period intervening between the time he registers and the close of election day? If this were so, then for the far greater part of the time Indiana would have no voters at all.

The Century Dictionary defines a voter as "one who votes, or has a legal right to vote; an elector." And it defines an elector to be "one who elects or has a right of choice; a person who has the legal right of voting for any functionary, or the adoption of any measure; a voter." The words "voter" and "elector" are interchangeably employed in the election and registration laws of Indiana, a consideration of which makes it evident that these terms as there employed have reference to those possessing the prescribed qualifications, having which, they are entitled to register and to do those other things which the law prescribes the voter shall do preliminary to actually depositing his ballot.

Section 6876, Burns' Stat. Ind., provides that one having the enumerated qualifications "shall be entitled to vote in the precinct where he may reside." Registration is not there stated as such a qualification. Section 6977e refers to the registration of "voters"; likewise section 6977w. Section 6977f, providing for places and notices for registration, prescribes a form of public notice headed "Important Notice to Voters of Registration," and it begins, "Every voter of the precinct is required to register at a session of the board," etc. Section 6977c provides for a registration board of three, one inspector and two clerks, who shall be voters of the voting precinct, the inspector to be appointed in August, and the clerks ten days before the meeting of the registration board. Section 6977x provides that in certain cases on petition of 300 voters, filed 80 days before the election, a session of the registration board shall be held on the 59th day before the election.

If by the term "voters," as employed in these acts, "registered

232 F.—42

voters" was meant, there could be no such earlier registration day fixed for lack of the 300 voters who would be qualified by their registration to sign the petitions. But, more serious, and yet more anomalous, since registration must be by and through the registration boards, the members of which can be only qualified voters, if to be such qualified voters they are required to be registered, there could be no registration boards, and hence no registry, and consequently no voters, either before or after the election, and the registration law would defeat itself and the election as well.

Section 6209 provides for filing certificates and petitions of nomination with the Governor of the state not more than 60, nor less than 20, days before the day of election. Section 6899 provides that petitions for nomination of candidates for office shall be signed by "electors qualified to vote for such candidates." If by "electors qualified to vote for such candidates" were meant only those who are registered, no petition for nomination could lawfully be signed or filed more than 29 days before the election, except in those special cases where by petition a registration day is fixed 59 days before the election.

There are various statutes prescribing that to inaugurate certain public acts or projects—such as making certain improvements, or issuing bonds and the like—a certain number or proportion of voters must sign petitions therefor. If in such statutes the term "voters" was held to mean "registered voters," there would be only a very brief period out of each two years during which such statutory requirements could be complied with. It thus seems plain enough that the statutes, in the enployment of the term "voters," do not of necessity contemplate voters who are registered.

The count charges that the conspiracy was entered into on *September 1st* to prevent the persons named and others unknown from voting for Senator and Congressman at an election which was to be held the following *November 3d*—63 days later. Voters can register the twenty-ninth day before the election (§ 6977d), or, in case of petition therefor, on the fifty-ninth day before the election (section 6977x). On the date fixed by the indictment as that on which the alleged crime was committed through entering into the conspiracy charged, it was impossible for any voter to have been registered for the following November election. So, even if the indictment had charged that on September 1st, the date of the alleged conspiracy, the voters to be affected by the conspiracy were registered, the allegation as to registration would have to be disregarded, because under the law they could not possibly then have been registered.

If, therefore, this count is invalid, because it does not state that those against whom the alleged conspiracy was formed were registered, there could be formulated no valid indictment for any conspiracy to prevent persons from voting, if the conspiracy was formed and had its existence during the time intervening between the close of one general election and 59 days prior to the next general election; and during such long periods of time conspiracies might thus be conceived and brought forth with absolute impunity, so far as regards the conspiracy laws of nation or state. Such result was surely not intended, nor do the

holdings of the courts in similar and analogous cases sustain the contention made.

In Steigman et al. v. United States, 220 Fed. 63, 135 C. C. A. 631, the indictment considered was for a conspiracy to violate section 29b of the Bankruptcy Act, which provides that one "having knowingly and fraudulently concealed while a bankrupt * * * from his trustee any of the property belonging to his estate in bankruptcy" shall be punished as provided. The indictment failed to show that a trustee in bankruptcy had been in fact appointed, and it was urged that, if there never was a trustee, there could not be a conspiracy to withhold property from a trustee. The court said:

"In view of the fact that in this case the defendants were charged by indictment with the crime of conspiring to violate a statute of the United States, and were not charged by the indictment with the actual violation of that statute, we are of opinion that the appointment of a trustee was not essential to complete the offense of conspiracy, and therefore the allegation of the appointment of a trustee was not essential in charging that offense."

The opinion quotes with approval from United States v. Cohn et al. (C. C.) 142 Fed. 983, the language of Judge Holt in passing on a demurrer to an indictment charging a similar conspiracy to violate the Bankruptcy Act, as follows:

"A conspiracy to commit a crime always, in the nature of the case, precedes the commission of the crime; and, in my opinion, it does not follow, because, at the time a conspiracy is entered into to conceal property from a trustee, no trustee has been appointed, and no proceedings in bankruptcy begun, that therefore the crime of conspiracy under section 5440 cannot have occurred. The indictment alleges, as a part of the conspiracy, a plan to bring about the filing of petitions in involuntary bankruptcy and adjudications thereon, and that, pursuant to the conspiracy, property was removed and concealed before the proceedings, were taken, was intentionally omitted from the schedules, and was kept concealed from the trustee after his appointment and qualification. In my opinion, such a conspiracy constitutes a criminal offense. The true test is could a conviction be had if no bankruptcy proceedings were ever taken. I think it could, if, in addition to the organization of the conspiracy, any of the parties to it did any act to effect the object of the conspiracy. Undoubtedly a criminal prosecution, in such a case, would be harsh and unusual; but, in my opinion, a crime would have been committed in such a case, even if no proceedings in bankruptcy were, in fact, ever taken. A conspiracy to murder joined with a single act done by the conspirators to effect the object of the conspiracy would be a crime under section 5440, and would not cease to be a crime because no murder was committed."

Under the reasoning of these cases, which we consider sound, it may well be said that if on September 1st an unlawful conspiracy was formed to deprive citizens of their right to vote, as charged in the indictment herein, the crime was then committed, and conviction for such conspiracy, might be had, wholly regardless of whether or not thereafter a single voter was in fact registered, or the election did in fact take place.

[4] But, apart even from this consideration, under the adjudicated cases it seems well settled that in an indictment for conspiracy to do an unlawful act, the unlawful act which is the object of the conspiracy is not required to be set forth with such particularity as in the case of a prosecution for the commission of the substantive offense, and

that in any event allegation of the qualifications of the voter would be sufficient if, as charged in the indictment herein, it is stated that the persons to be prevented from voting "were qualified voters and entitled to vote at said election."

In Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, the indictment charged a conspiracy to commit subornation of perjury. To the objection that the indictment did not set out with technical precision the elements essential to the commission of the crime of subornation of perjury, the court said (207 U. S. 447, 28 Sup. Ct. 171 [52 L. Ed. 278]):

"But in a charge of conspiracy the conspiracy is the gist of the crime, and certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy."

It was further said in that case (207 U. S. 449, 28 Sup. Ct. 171, 52 L. Ed. 278):

"It was not essential to the commission of the crime that in the minds of the conspirators the precise persons to be suborned, or the time and place of such suborning, should have been agreed upon, and as the criminality of the conspiracy charged consisted in the unlawful agreement to compass a criminal purpose, the indictment, we think, sufficiently set forth such purpose."

In Ching v. United States, 118 Fed. 538, 55 C. C. A. 304, the court, referring to an indictment for conspiracy to commit an offense, said:

"In such cases the offense which is intended to be committed as the result of the conspiracy need not be described as fully as would be required in an indictment in which such matter was charged as a substantive crime."

United States v. Cahill (C. C.) 9 Fed. 80, involved an indictment for unlawfully preventing a qualified voter from exercising the right to vote. The person whose vote was refused was described as "a qualified voter." No specific qualifications were enumerated. The court said:

"While it may be conceded that where a person offering to vote sues an officer of election for refusing his vote, or where he is the party plaintiff whose right of action is dependent on his legal qualification, he should set out the facts on which his qualification rests, yet that rule does not apply where, as in this case, the defendant is not the voter, but a defendant in a criminal proceeding against him for unlawfully interfering with the voter. It will devolve on the United States at the trial to show affirmatively that Batton was a legally qualified voter, entitled to cast his vote for Representative in Congress at the election named, but the detailed facts on which his qualification depends need not be averred in the indictment."

And this reasoning in the last-cited case clearly distinguishes Wiley v. Sinkler, 179 U. S. 58, 21 Sup. Ct. 17, 45 L. Ed. 84, on which counsel for plaintiffs in error apparently place much reliance. This was an action for civil damages against election officers for willfully refusing to receive the plaintiff's ballot. It was held that the plaintiff must in his complaint allege that he had done all those things which at that time entitled him to cast his ballot, including in such requisites, registry; since, if he had not then been registered, it would have been the duty of the defendants to have prevented his voting.

A situation quite similar to that here was presented in Commonwealth v. Rogers, 181 Mass. 184, 63 N. E. 421, in which was consid-

ered an indictment for a conspiracy to procure persons to vote who were not entitled to vote, and to aid and abet illegal voters in voting. The qualifications, or rather the want of them, of those who were to be voted, were described by the words "not entitled to vote," and the allegations there, as here, embraced persons unknown as those who were to be so procured to vote. The court, speaking through Mr. Justice Holmes, said (181 Mass. 189, 63 N. E. 424):

"It is said that the first count is bad because it does not show how the persons whom the defendants conspired to procure to vote were not entitled to vote. The allegation embraces persons unknown, so that the requirement is impossible, and this illustrates the fact that such a conspiracy might be completed before any of the persons to be procured had been agreed upon. But it follows from that fact that the particular nature of the disqualification is in no way material to the offense. Therefore it seems to us unnecessary to the defense to require it to be alleged. * * * A similar objection is made to the other counts for abetting in voting persons not entitled to vote. * * * It seems an excess of formality to require a more detailed denial of the specific marks which constitute a qualification to vote. They all are denied by the phrase 'not entitled to vote.'"

An inspection of the transcript of record in the Mosley Case, supra, shows that in the indictment there the qualifications of the voters, whom it was alleged the conspirators intended to deprive of the benefit of their votes, were not set out at all further than to describe them (as was also done in the first count here) as qualified voters of the precincts named, and there, as here, it was alleged that persons unknown were also to be affected by the conspiracy. There was no allegation of registration, although Oklahoma had a registration law generally similar to that of Indiana and other states. Sections 3151 to 3177, Rev. Laws of Okla. 1910. The Supreme Court held the indictment good, reversing the District Court, which on demurrer had held otherwise. The question here under consideration was not, however, discussed in the court's opinion.

The allegation in the count here, that those to be deprived of their votes were "qualified voters and entitled to vote at said election," sufficiently informed the defendants of the nature of the charge in this respect, to enable them to meet it, and protect them against further prosecution for the same offense. More detailed allegation of the qualifications which would entitle the voter to cast his vote at the election would be formal rather than substantive. As to a similar situation, the Supreme Court in New York Central R. R. v. United States, 212 U. S. 481, at page 497, 29 Sup. Ct. 304, at page 308 [53 L. Ed. 613], aptly said:

"Objections were made as to the sufficiency of the indictment based upon its want of particularity in describing the offense intended to be charged. Section 1025 of the Revised Statutes of the United States [Comp. St. 1913, § 1691] provides that no judgment upon an indictment shall be affected by reason of any defect or imperfection in matter of form which shall not tend to the prejudice of the defendant, and, unless the substantial rights of the accused were prejudiced by the refusal to require a more specific statement of the manner in which the offense was committed, there can be no reversal. Connors v. United States, 158 U. S. 408, 411 [15 Sup. Ct. 951, 39 L. Ed. 1033]; Armour Packing Co. v. United States, 209 U. S. 56, 84 [28 Sup. Ct. 428, 52 L. Ed. 681]. An examination of the indictment shows that it specifically states the elements of the offense with sufficient particularity to fully advise the defendant

of the crime charged, and to enable a conviction, if had, to be pleaded in bar of any subsequent prosecution for the same offense."

We find that the first count properly and sufficiently charges that the defendants conspired to injure and oppress the persons therein named, and persons unknown, in their right to vote for a United States Senator and a Member of Congress at an election where such officers were to be elected, and is therefore a valid count.

[5] The plaintiffs in error were respectively sentenced upon each of the several counts, and the sentence of imprisonment in each case was made to run concurrently on all the counts; the longest term of imprisonment, as to the several counts, as well as the fine imposed, being in each instance upon the first count. Under these circumstances, the first count being sufficient to sustain the judgment of the District Court, the other counts need not be considered. Johnson v. United States, 215 Fed. 679, 131 C. C. A. 613, L. R. A. 1915A, 862; United States v. Lair, 195 Fed. 47, 115 C. C. A. 49; Bartholomew v. United States, 177 Fed. 902, 101 C. C. A. 182; Haynes v. United States, 101 Fed. 817, 42 C. C. A. 34; Tubbs v. United States, 105 Fed. 59, 44 C. C. A. 357; Claassen v. United States, 142 U. S. 140, 12 Sup. Ct. 169, 35 L. Ed. 966.

In the absence of a bill of exceptions, we are conclusively bound to presume there was evidence to warrant the jury's verdict on which the judgment is based; and, the record disclosing no error, the judgment of the District Court is affirmed.