**UNITED STATES v. ELLIS et al.**

No. 8626.

District Court, W. D. South Carolina,
Spartanburg Division.

March 2, 1942.

Oscar H. Doyle, U. S. Atty., and Thomas A. Wofford, Asst. U. S. Atty., both of Greenville, S. C., and Arthur B. Caldwell, Sp. Asst. to the Atty Gen., for the United States.

Wolfe & Fort, of Gaffney, S. C., for defendants.

WYCHE, District Judge.

The indictment in this case charges the defendants F. E. Ellis, John E. Wright and T. E. Meetze, of the City of Gaffney, County of Cherokee, in the State of South Carolina, with having violated section 51, title 18 U.S.C.A. in four counts. The first count charges that the defendants on or about the second day of September,. 1940, at Gaffney, in Cherokee County, in said State of South Carolina, in the Spartanburg Division of the Western District of South Carolina, and within the jurisdiction of this Court, did unlawfully, feloniously, and knowingly combine, conspire, confederate, and agree together, with intent to injure, oppress, threaten, and intimidate one Lottie P. Gaffney, a citizen of the State of South Carolina, and of the United States of America, in the free exercise and enjoyment of a certain right and privilege secured to her by the Constitution and laws of the United States of America, that is to say, the right to vote in the General Election held in the State of South Carolina, County of Cherokee, within the Western District of South Carolina, for the purpose of electing Presidential Electors and a representative in the Congress of the United States of America, the right and privilege to vote in said election being granted and secured to her as a citizen of the United States of America by the Constitution and laws of the United States of America, etc.

This count continues as follows: "that in furtherance of said conspiracy, combination, confederation and agreement, the said F. E. Ellis, John E. Wright and T. E. Meetze, on or about the second day of September, 1940, and immediately prior thereto, while acting as members of the Election Registration Board, did refuse, deny and prevent, by threats and intimidation, the said Lottie P. Gaffney from registering before the said Board, and did deny and refuse to issue to the said Lottie P. Gaffney a certain registration certificate, to which the said Lottie P. Gaffney was then and there entitled as a citizen of the United States of America and as a qualified

elector of the county and state aforesaid, and without the possession of said certificate she was then and there prevented from voting in the General Election * * *", etc.

The three remaining counts are the same as the first, except they name different citizens as being the victims of the alleged conspiracy.

The defendants demur to the indictment and move to quash it upon the following grounds:

"1. That it appears upon the face of the indictment that it does not charge an offense under the statutory law to wit: Section 51, Title 18 U.S.C.A. in that the *right* contemplated by said section is one secured to the complainant by the Constitution of the United States and it does not appear upon the face of said indictment, that such a right was involved in that it is alleged that the members of the Board of Registration, to wit: the defendants herein, 'did deny and refuse *to issue to the said Lottie P. Gaffney, Bernice Bonner and Lillian Bonner a certain registration certificate*' whereas Amendment XV of the Constitution of the United States specifically applies to the right to vote, it being therein stipulated that 'the right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of *race, color, or previous condition of servitude.*'

"2. It is submitted that the Board of Registration created by Section 2269, Vol. 2, Code of Laws for South Carolina 1932, is therein clothed with certain powers with reference to issuing registration certificates to qualified electors in the State of South Carolina and that the defendants were acting at the time alleged, in the capacity of such officers and were discharging their duties as prescribed by Section 2267 of said Vol. 2 of said Code and Subsection (d) of section 4, of Article 2 of the Constitution of 1895, South Carolina, and that the offense alleged in the indictment *presupposes the existence of the qualifications to vote,* which qualifications are determined by the Board in the exercise of these powers. That it is necessary under the Section of the Code which has been referred to, and the provisions of the Constitution, *that any person who shall apply for registration by said Board of Registration shall have been a resident of the State for two years and in the County for one year and shall have proved to the satisfaction of said Board that he or she could both read and write any section of the Constitution submitted to the applicant for registration, or in the alternative, that he or she possesses property in the assessed valuation of $300.00 and that the taxes thereon collectable during the previous year,* to wit, 1939, were paid, and it is not alleged that these requisites were met by the complainants.

"3. The indictment fails to charge the offense of conspiracy in that the defendants were members of a Board at the time alleged, constituted under the law of the State of South Carolina as a *Board of Registration* and were acting as a *Board* and not in their individual capacity in all matters pertaining to the discharge of their duties as a Board of Registration at the time and that as such, they could not commit a 'conspiracy' having had no individual *status* other than as *members of said Board.*

"4. That said indictment is fatally defective in that it does not allege that the said Lottie P. Gaffney, Bernice Bonner and Lillian Bonner presented themselves to the said Board of Registration at the proper time and at the proper place and complied with the necessary pre-requisites to the issuance of the said registration certificates and qualified in the particulars hereinabove stipulated for said registration certificates, and that thereupon, said registration certificates were definitely refused as a result of the alleged conspiracy on the part of the defendants."

■ (1) Section 51, Title 18 U.S.C.A. is not limited merely to the protection of a citizen against conspiracies to injure or intimidate him in his right to vote in a general election where members of Congress are to be elected. It provides that, if two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment *of any right or privilege* secured to him by the Constitution or laws of the United States, they shall be punished, etc. Therefore, it is apparent that the Congress in enacting this law intended it for the protection of the free enjoyment of *any* right or privilege under the Constitution or laws of the United States. It has been decided that the statute applies to the right to make a homestead entry (United States v. Waddell, 112 U.S. 76, 5 S.Ct. 35, 28 L.Ed. 673); to the right to be protected in the execution and enforcement of a decree of a United States Circuit Court (United States v. Lancaster,

C.C., 44 F. 885); to the right to the equal protection of the laws (United States v. Blackburn, Fed.Cas.No. 14,603); to a witness in his right to be protected in giving testimony before the land office in a contest which involves the right of entrymen under the land laws of the United States (Foss v. United States, 9 Cir., 266 F. 881); to the right of citizens to hold office and exercise its functions (United States v. Patrick, C.C., 54 F. 338); to the right to be free from slavery (Smith v. United States, 8 Cir., 157 F. 721, certiorari denied 208 U.S. 618, 28 S.Ct. 569, 52 L.Ed. 647); to the right of a citizen under indictment and in custody of United States Marshal on United States offense, to be protected against lawless violence (Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429); to the right of a citizen under indictment for a federal offense to speedy and public trial (Logan v. United States, supra); to the right and privilege to aid in the execution of the laws by giving information to the proper authorities of violation of those laws. Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150.

■ The right to vote preceded the enactment of the 15th Amendment. It springs from Art. 1, Section 2 of the United States Constitution. The 15th Amendment prohibits the denial of the right to vote because of race, color, or previous condition of servitude. Under this statute, it is clear that the race, color, or previous condition of servitude is wholly immaterial. The words "any citizen" must necessarily include both negro and white. Felix v. United States, 5 Cir., 186 F. 685.

■ Section 4 of Article 1 of the Constitution says: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations * * *." From this it is apparent that the Constitution places authority in Congress over General Elections. The Federal Statutes applying to conduct and control of Federal Elections are too well known and too numerous to mention here. It is sufficient to say the law and decisions are well settled that the right to vote is protected under this statute. United States v. Mosley, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355; Guinn v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340, L.R.A.1916A, 1124; Aczel v. United States, 7 Cir., 232 F. 652; Ex Parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L. Ed. 1365. It is fundamental that the right to vote includes the right to be permitted to comply with the State requirements for voting and any citizen who attempts to fulfill the State requirements, or having complied with them, is protected against illegal conspiracies condemned by this statute. Since it is a prerequisite in South Carolina to register before voting (§ 2268, Code of Laws, South Carolina 1932), it is clear that registering is a necessary and vital part of participating in a Federal or general election, where members of Congress are to be elected.

■ It is, therefore, my opinion that the right to vote in a Federal election comprehends and includes the right to register for a General Election, in which members of Congress are to be elected.

■ (2) The second ground in the demurrer claims that the Government's failure to allege in the indictment that the citizen had complied with each and every requirement of the State Code of Laws and the State Constitution, is fatally defective. I cannot agree with this contention. The indictment alleges: that the alleged victim of the conspiracy had a right to vote in the election; that she was then and there entitled to a certain registration certificate; and, that she was a qualified elector of the County and State aforesaid. This is sufficient allegation of her qualification. It is not necessary for the Government to enumerate in the indictment all the provisions concerning residence, in State and County and voting precinct, educational qualifications, or the amount of taxes paid, nor to enumerate the entire list of crimes set forth in the State Constitution of 1895 and allege that she had not been convicted of any of them. The allegations of the voter's qualifications in this indictment are sufficient here and a more detailed allegation of the qualifications which would entitle the voter to cast a vote at the election (or receive a registration certificate) would be formal rather than substantive. Aczel v. United States, 7 Cir., 232 F. 652.

■ (3) The demurrer contends that since these defendants were acting as Election Board of Registration, they were clothed with certain state authority, and so long as they were acting as a Board they could not conspire, as the Board was a unit and could not conspire with itself.

However, an examination of the indictment, and particularly the charging part, will disclose that they are charged as individuals. The indictment does not mention the Board of Registration in the charging part of the indictment. The term Election Board of Registration does not appear except following the phrase, "that in furtherance of said conspiracy" * * * Ellis, Wright and Meetze did certain things i. e., while acting as a Board.

The gist of the crime is stated in that part of the indictment which charges the defendants as individuals, and by name, with having conspired together to injure and intimidate a citizen in her right to vote at a general election in which a member of Congress was to be elected, the right to participate in such an election being a right granted to her as a citizen of South Carolina and of the United States.

Counsel for defendants, however, contend that if the Government has indicted the defendants, Ellis, Wright and Meetze as individuals and co-conspirators that it is necessary to allege in the indictment along with the allegation of conspiracy an additional averment in the nature of an overt act. Such allegation of an overt act is unnecessary. Section 51, Title 18 U.S.C.A. is an exception to the rule that conspiracies when alleged in indictments must be supported by the allegation of at least one overt act in furtherance of the conspiracy. Under this section of the Code all that is necessary to prove is that two or more persons did conspire or agree together to injure, intimidate, threaten or oppress a citizen or citizens of the United States in their enjoyment of their rights and privileges under the Constitution or laws of the United States. It is unnecessary to prove additional facts in the nature of overt acts. And while this indictment does go further and does allege and describe the means whereby the citizens named were to be intimidated and threatened, such statement is unnecessary to the sufficiency of the indictment and merely adds to and describes.

The United States Circuit Court of Appeals for the 8th Circuit, in deciding a case under this section, has held as follows: "The indictment for conspiracy under section 5508 [Section 51, Title 18 U.S.C.A.] is different from one under section 5440. [Section 88, Title 18 U.S.C.A.] In the latter an overt act must be pleaded, while in the former none is required. We therefore find no occasion in this case for application of the rule laid down in United States v. Britton, 108 U.S. 199, 205, 2 S. Ct. 531, 27 L.Ed. 698, that a charge of conspiracy cannot be aided by averments of acts done in furtherance of it. * * * Certain acts are charged to have been performed in furtherance of the conspiracy. These must necessarily be referred to the charge of conspiracy, which is the subject of the indictment, for their legitimate scope and operation. Even in indictments under section 5440 reference may be made to averment of overt acts, not to supply any omitted elements of the crime, but for the purpose of elucidating the meaning of terms employed in charging the crime. * * * Much more is this true in an indictment under section 5508 [Section 51, Title 18 U.S.C.A.], wherein no overt act is required to be averred. All the averments of such an indictment may be taken into account in relieving essential averments actually made of possible doubt and uncertainty. 'The entire indictment is to be considered in determining whether the offense is fully stated.' Dunbar v. United States, 156 U.S. 185. * * *" Smith v. United States, 8 Cir., 157 F. 721, at pages 725, 726.

The same Court at a later date, held as follows: "The errors relied upon are insufficiency of the indictment, and insufficiency of the evidence. The indictment was under section 19 of the Criminal Code [Section 51, Title 18 U.S.C.A.]. The portion of the statute here of moment is: 'If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States,' they shall be punished. * * * The accused challenges the sufficiency of this indictment on these grounds: '(a) It does not aver an overt act. (b) It does not go into particulars of the crime. (c) It does not define the oppression, intimidation, injury, or threat which is pretended to have been exerted, and does not descend into particulars in these respects or any of them. (d) There was no specification of the manner in which the homestead entryman was to be oppressed, or injured, or intimidated, or threatened, * * *'. The statute does not require an overt act as an element of the crime. *The conspiracy alone completes the crime.*" Montoya v. United States, 8 Cir., 262 F. 759.

These men are indicted as individuals who, it is alleged, illegally conspired with each other to intimidate, injure, and oppress certain citizens in their right and privilege to participate in a Federal election. It does not allege that the Board illegally conspired, because the Board as such obviously has no authority to conspire, and the instant that these men entered into an illegal conspiracy to do an act which is not authorized under the laws of South Carolina or the Federal Government, their actions ceased to be actions of the Board and necessarily became actions of the individuals.

The Government does not allege that these men were acting under any color of law, state or national. There is a section to cover such instances in the United States Code Annotated, Section 52, Title 18 but these men are not indicted under that section, nor can the Government claim they violated that section under this indictment for the reason that when it is alleged that the defendants conspired to deprive the citizens of their constitutional right, to injure, intimidate and oppress them in their privilege to participate in a federal election, they were obviously not acting under color of any law of the State of South Carolina or of any other state or government. It should be apparent from the reading of the two sections that Section 51, Title 18, of United States Code Annotated is applicable to instances of conspiracy on the part of both private individuals and public officials, whereas Section 52 of Title 18 U.S.C.A. is applicable only to public officials who are acting under their authority or color of some state law.

For the purposes of this prosecution, the Government does not question the constitutionality of the laws of the State of South Carolina in connection with the registration of voters, nor does the Government allege in its indictment that these members abused their discretion, if any, in refusing to register these people because of the qualification set forth in the statutes of South Carolina and authorized in the Constitution of South Carolina. All that the indictment alleges is that these citizens of South Carolina and of the United States, in their right to participate in the Federal elections, have been conspired against by threatening, injuring and oppressing on the part of the three defendants herein charged. Having said that, it complies with the requirements under this statute and under the Federal cases decided under this section.

(4) As to the fourth ground of the demurrer, the indictment alleges the date as September 2, 1940, and that the defendants conspired on that date and immediately prior thereto. It alleges that these citizens presented themselves to the defendants in the City of Gaffney, Cherokee County, South Carolina, and within the jurisdiction of this Court, and while they were acting as an Election Board of. Registration. It cannot be said that the defendants did not know when and where they were acting as an Election Board on September 2, 1940.

If it is claimed that additional details could have been added, the omission of these extra details are not such as would prejudice these defendants in their defense nor prevent them from pleading former jeopardy in a subsequent trial on a similar allegation of facts, and that, after all, is the measure applied in deciding whether the essential elements of an offense has been stated in the indictment.

Defense counsel in his brief in support of demurrer and motion to quash, calls the Court's attention to the fact that in the State of South Carolina, the word "qualified elector" as used in the indictment herein means "registered elector", and cites a decision of the Supreme Court of South Carolina (State v. Rector, 158 S.C. 212, 155 S.E. 385) in support of this contention. This decision is one on the qualifications of jurors in the State of South Carolina, and the Court held that the meaning of the term "qualified elector" *in the Constitution* means a registered elector, and that a juror, grand as well as petit, must be a registered elector of the County in which he is called to serve.

While the Government does not concede that this decision holding that the words "qualified elector" in the Constitution as decided here means the same thing when used in other occasions, such as an indictment in this case, yet, for the purposes of argument, let it be assumed that it does have the same meaning. The Courts have held that one must look at the whole indictment and that technical meanings of individual words are not sufficient to thwart the administration of justice when it is apparent on the face of the whole indictment that the accusation is

**327**

clear and understandable and the defendant is not prejudiced.

Attention is directed to the line in the indictment in which the words "qualified elector" are used. An examination of that line clearly demonstrates that while the Government does term the citizen a "qualified elector of the County and State aforesaid", yet the following words are as follows: "and without the possession of which said certificate she was then and there prevented from voting", etc.

■ The allegations in the indictment are clear and to the effect that the individual citizens at the time they presented themselves to the Board did not have certificates of registration, and therefore this indictment should not be quashed because of such technical objections. 18 U.S.C.A. § 556; New York Central & H. R. R. v. United States, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613; Connors v. United States, 158 U.S. 408, 411, 15 S.Ct. 951, 39 L.Ed. 1033; Armour Packing Co. v. United States, 209 U.S. 56, 84, 28 S.Ct. 428, 52 L.Ed. 681; Aczel v. United States, 7 Cir., 232 F. 652.

For the foregoing reasons the demurrer and the motion to quash must be overruled.