**UNITED STATES of America,
Plaintiff,**

v.

**Joao Battiate DONAS–BOTTO, a/k/a Major Joao Botto, a/k/a Major John Botto, et al., Defendants.**

**Crim. A. No. 47143.**

United States District Court,
E. D. Michigan, S. D.

Aug. 15, 1973.

---

William C. Ibershof, Detroit, Mich., for plaintiff.

Ivan Barris, Detroit, Mich., Monroe Karasik, Washington, D. C., Mark J. Kadish, Boston, Mass. (David I. Kaufman, Detroit, Mich., of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is a motion by defendants to dismiss the indictment against them.

Defendants were indicted under authority of 22 U.S.C. § 1934, and the regulations promulgated thereunder, for conspiracy to export arms and implements of war without having first obtained an export license or written approval of the State Department.

In pursuance of that conspiracy defendants are charged with making arrangements to transfer a Commando XM–706 military armored amphibious vehicle from the Republic of Germany to Portugal for use in that country to assist in the manufacture of a similar vehicle.

The indictment is challenged as being violative of the five (5) year statute of limitations, 18 U.S.C. § 3282. Defendants allege that none of the six overt acts charged falls within the five (5) year statutory period.

An evidentiary hearing was held May 25, 1973, on the issue of the occurrence of the overt acts to determine, in advance of trial, whether the indictment was barred by the statute of limitations. Depositions of witnesses in Portugal had been taken and testimony was produced in court to provide the basis for the court's ruling.

Examination of the indictment discloses that overt acts one (1) through four (4) are alleged to have occurred prior to May 2, 1967, the date the indictment was filed. It is clear, therefore, that acts one (1) through four (4) do not bring the conspiracy within the five (5) year statute of limitations.

It is equally clear from the deposition and testimony taken at the evidentiary hearing that alleged overt act five (5) occurred on or about April 15, 1967, and does not bring the conspiracy within the statute of limitations.

Thus only alleged overt act six (6) may be relied upon to place the conspir-

acy within the five (5) year statute of limitations. Overt act six (6) charges that "in or about July, 1967, the defendant, Gerald Milton Larson, supervised the dismantling of a Commando XM–706 military armored amphibious vehicle at Lisbon, Portugal."

The determination of the present motion turns on the use of the term "supervised the dismantling." It is admitted for purposes of this motion that defendant Larson "supervised" whatever was done to the vehicle during the specified time period in alleged overt act six (6). The facts, in their most favorable light to the government, indicate the following.

The armored car arrived in Portugal in early April. It was put in working order and driven on several occasions throughout the next four (4) or five (5) months.

During this time the vehicle was serviced. A transfer case was removed to check the axle. A tunnel cover was removed to check the hydraulic fluid.

In addition, parts of the vehicle were removed for measurement to facilitate the construction of a similar vehicle in Portugal. The evidence shows that the front seat, tunnel cover, transfer case cover and hatch were removed and measured. The measuring of these items was part of a process referred to by Mr. Robert Decker, at the evidentiary hearing, as "reverse engineering", the process of construction by measurement and duplication of an existing model.

Defendants contend the activity of removing parts from the vehicle and measuring them for "reverse engineering" purposes is not "dismantling" the vehicle as the indictment charges. They contend dismantling would be something akin to "take apart, to raze, to make unusable for its original purpose, to deprive of essential parts as to dismantle a house, as to dismantle a ship."

The government contends, however, that "indictments are to be construed on the basis of practical rather than technical considerations", and that the term "dismantle" should not be read restrictively.

The key issue in this case is the substance of the activity engaged in by the defendants, which the government alleges as overt act six (6), and not the verbal, or formal, description the government ascribes to that alleged activity. To reduce the inquiry into the substance of an act to a semantic quibble over the designation of that act avoids the gravamen of the situation. Whether the activity is termed "dismantling", "disassembly", or "removal of various parts", the common sense meaning is clear. The defendants were engaged in the alleged construction of an armored vehicle by the process of "reverse engineering", which required the separation of various component parts from the model vehicle for purposes of inspection and measurement.

■ To isolate and dissect individual words in an indictment is improper when, considering the language used within the context of the indictment as a whole, the meaning is clear. United States v. Ellis, 43 F.Supp. 321, 326–327 (W.D.S.C.1942); Humphries v. Green, 397 F.2d 67 (6th Cir. 1968); Miller v. United States, 125 F.2d 517 (6th Cir. 1942).

■ It also cannot be said that the indictment, considered as a whole, does not fairly put the defendants on notice of the charges against them. Boehm v. United States, 123 F.2d 791, 812 (8th Cir. 1941); United States v. Holdsworth, 77 F.Supp. 148 (D.Maine 1948); United States v. National Retail Lumber Dealers Assn., 40 F.Supp. 448, 455 (D. Col.1941). The language in the indictment fairly apprises the defendants of the substantive nature of the charges— that the conspiracy was furthered by the acts of the co-conspirators supervising the removal of parts from the vehicle to assist in the manufacture of a Portuguese vehicle. Such language does not prejudice the defendants, or cause them to be surprised at trial.

 Defendants further contend "technical knowledge" is not within the purview of 22 U.S.C. § 1934, and that the statute covers only the illegal exportation of printed or reproduced technical data. They contend an extension of 22 U.S.C. § 1934 to include "technical knowledge" would be violative of the First Amendment.

The regulations promulgated under the authority of 22 U.S.C. § 1934 shed light on what "technical data" is to include.

"As used in this subchapter the term 'technical data' means: (a) any unclassified information that can be used, or adapted for use, in the design, production, manufacture, repair, overhaul, processing, engineering, development, operation, maintenance, or reconstruction of arms, ammunition, and implements of war on the U.S. Munitions List . . ." 22 C.F.R. § 125.01 (1970).

"The export controls of this subchapter over technical data (a) apply to the export of unclassified technical data relating to arms, ammunition, and implements of war on the U.S. Munitions List, and (b) classified equipment and classified information relating to arms, ammunition, and implements of war on the U.S. Munitions List as defined in § 125.02. These controls shall apply whenever the information is to be exported by oral, visual, or documentary means . . ." 22 C.F.R. § 125.03.

It is clear from the language of these regulations that "technical knowledge" was to be included in the purview of the statute.

 Such inclusion does not violate the First Amendment. Although First Amendment rights are to be closely guarded, when matters of foreign policy are involved the government has the constitutional authority to prohibit individuals from divulging "technical data" related to implements of war to foreign governments. United States v. Rosen, 195 F.2d 583 (2d Cir. 1952), cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652 (1952); Gorin v. United States, 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488 (1941).

For the foregoing reasons, defendants' motion to dismiss is denied.

So ordered.